UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 17-CR-213 (CRC) |
| | : | |
| MUSTAFA MUHAMMAD MUFTAH AL-IMAM, | : | |
| | : | |
| Defendant. | : | |

UNITED STATES' MOTION *IN LIMINE*
TO ADMIT PHONE RECORDS

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia, pursuant to Federal Rules of Evidence 104 and 803(6) and 18 U.S.C. § 3505, respectfully moves to admit as evidence at trial phone records of Libyana Telecommunications and the certification of the same. As this Court previously held in a related matter, the phone records are admissible business records under Rule 803(6) because they have been certified by a foreign records custodian in accordance with Section 3505. Additionally, that foreign certification is admissible to identify and substantiate for the jury that the records are, in fact, business records. Neither document is testimonial in nature, and thus their admission without a witness does not violate Defendant Mustafa Al Imam's rights under the Confrontation Clause, as numerous courts have held.

I.      BACKGROUND

On or about October 24, 2012, the Federal Bureau of Investigation ("FBI") obtained telephone records for the phone number 218926390532.[1]  9/21/17 Mem. Opn. at 5. These records

---

[1]      This Court made findings of fact regarding these records and their admissibility in its Memorandum Opinion and Order in *United States v. Abu Khatallah*, 14-cr-141, Doc. No. 370

were in electronic form and contained (1) call data records for the period of August 1, 2012 to October 21, 2012 (3435 calls), (2) subscriber information for the phone number, and (3) SMS records for the period of August 18, 2012 to September 29, 2012. *See id.*; *see also* Ex. C (Trial Ex. 1100). The government anticipates that testimony elicited at trial will prove that Defendant's co-conspirator and joint offender, Ahmed Salim Faraj Abu Khatallah (hereinafter "Khatallah"), utilized phone number 218926390532 for the period of time covered by the phone records.

In January 27, 2017, FBI Special Agents met with the CEO of Libyana Telecommunications ("Libyana") in Tunis, Tunisia. 9/21/17 Mem. Opn. at 5. At the meeting, the Agents presented the CEO with a paper copy of the phone records and the CEO reviewed the same records. *Id.* The CEO told the Agents that Libyana maintains call data records as a matter of general practice for reasons such as accountability and billing, and that he was familiar with Libyana's business records and practices. *Id.* The CEO reviewed the phone records for several minutes and told the Agents that the records were call data records from Libyana, explaining that the format of the records and the "profile page" that listed the information about the subscriber were unique to Libyana. *Id.* The CEO explained that he had helped design the format of the profile page with the subscriber information and that he recognized that format in the phone records. *Id.* The CEO also told the Agents that two particular telephone number prefixes—092 and 094—were used solely for numbers serviced by Libyana, and noted that the number in the records had a 092 prefix. *Id.* at 5-6.

---

(Sept. 21, 2017) (hereinafter "9/21/17 Mem. Opn."). In support of this Motion, the government submits the sworn testimony of FBI Special Agent Justin O'Donnell. *See* Ex A. The government also submits additional evidence under seal, *see* Ex. B, although the government asserts that it is unnecessary for the Court to rely on this additional evidence. Based on the records themselves and the certification, as well as the evidence in Exhibit A, the government submits that it has shown by a preponderance of the evidence that the phone records are admissible business records.

At the meeting, the Agents asked the CEO to sign a certification form attesting to the authenticity of the records. *Id.* at 6. The Agents and the CEO went through the form, line-by-line, to confirm his understanding before he signed it. *Id.*; *see also* Ex. D (1/27/17 Certification). The certification stated it was made under the criminal penalty of perjury of the laws of Libya and Tunisia,[2] and declared that the records were original or true copies of records which (1) were made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person with knowledge of those matters; (2) were kept in the course of regularly conducted business activity; (3) were made by the said business activity as a regular practice; and (4) if not the original records, are duplicates of the original records. *See* Ex. D. The certification noted that the original records or duplicates were maintained in the country of Libya. *Id.* The CEO was unable to compare the phone records to records in his system for the same period due to an unrelated data corruption issue. 9/21/17 Mem. Opn. at 6.[3]

On July 12, 2017, one of the Agents sent the telephone records for the phone number 218926390532, in their electronic form, to the CEO. 9/21/17 Mem. Opn. at 6. The Agent asked the CEO to analyze the records once more and compare them to existing phone records in the Libyana company databases. *Id.* The CEO again confirmed that the phone records were, in fact, Libyana's call data records. *Id.* The CEO signed another records certification attesting to the same, which was made under the penalty of perjury of the laws in Libya. *Id.*; *see also* Ex. E (7/18/2017

---

[2]     Article 356 of the Libyan Penal Code and Articles 241-244 of the Tunisian Penal Code both criminalize false statements.

[3]     Following the January 27, 2017 meeting, the CEO emailed one of the Agents with additional phone records for phone number 218926390532, covering the time period of February 21, 2014 through April 28, 2014. *Id.* The CEO informed the Agent that he was unable to produce phone records for phone number 218926390532 for the time period of July to December 2012 because the company's electronic phone records had been corrupted. *Id.*

Certification). The second certification attested to all the same information as the first certification. *Id.*

The FBI Agents confirmed the authenticity of the records by verifying that they included calls that independent evidence indicated had occurred during the time period covered by the phone records. Mem. Opn. at 7. Specifically, the Agents were aware from interviews with Khatallah about two calls that Khatallah stated took place on September 11, 2012. *Id.* Both calls were also listed on the phone records. *Id.*

The government now seeks to admit the phone records (Ex. C) and the July 18, 2017 Certification (Ex. E).

## II.    LEGAL STANDARD

Under the Federal Rules of Evidence, the Court "must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In making this determination the Court "is not bound by evidence rules except those on privilege," *id.*, and thus the Court may take into account hearsay evidence in making the admissibility determination. The Court may conduct a hearing, but a hearing is not required in this instance. Fed. R. Evid. 104(c). The proponent of the evidence must show by a preponderance of the evidence that any necessary prerequisites for admission have been met. *Bourjaily v. United States*, 483 U.S. 175, 176 (1987).

The Federal Rules or Evidence permit the admission of a "record of an act, event, condition, opinion or diagnosis" as a business record if:

1.  the record was made at or near the time by—or from information transmitted by—someone with knowledge;

2.  the record was kept in the course of a regularly conducted activity of a business; and

3.  making the record was a regular practice of that activity.

4

Fed. R. Evid. 803(6). These conditions must be shown "by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." *Id.* The record is only admissible if the opponent to admission "does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* Once the admitting party makes a prima facie showing of trustworthiness, the burden shifts to the opponent to prove untrustworthiness of the records. *E.g.*, *Shelton v. Cons. Prod. Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002) (discussing the standard under the prior version of the rule, which contained identical relevant language).

Applicable here, 18 U.S.C. § 3505 is a statute permitting certification of a business record. Section 3505 provides that "a foreign record of a regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule" in a criminal case if there is a "foreign certification" attesting that:

1. such record was made, at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters;

2. such record was kept in the course of a regularly conducted business activity;

3. the business activity made such a record as a regular practice; and

4. if such record is not the original, such record is a duplicate of the original.

*Id.* § 3505(a)(1). A foreign certification is defined as "a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or another qualified person that, if falsely made, would subject the maker to criminal penalty under the laws of that country." *Id.* § 3505(c)(2). With a valid foreign certification that attests to the relevant requirements, a foreign record is admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* § 3505(a)(1). The statute further

5

provides that a party intending to offer foreign business records pursuant to the statute shall "[a]t the arraignment or as soon after the arraignment as practicable" provide "written notice of that intention to each other party." *Id.* § 3505(b).

## III.   ANALYSIS

### A.   The phone records are admissible under 18 U.S.C. § 3505, and therefore Rule 803(6).

The July 18, 2017, certification meets the requirements of 18 U.S.C. § 3503(a)(1), and therefore Fed. R. Evid. 803(6).[4] As stated in the certification, the document attests that the records were made near the time of the matters set forth therein, that they were kept in the regular course of business, that they were made as a regular business practice, and that if not originals, they were duplicates. *See* Ex. E. Additionally, the Certification attests that it was sworn under the penalty of perjury under the laws of Libya, as required by § 3505(c)(2). This Court previously found the Certification met the strictures of § 3505(a). Mem. Opn. at 11-12.

The CEO is qualified to serve as a custodian of record who can certify the phone records. A qualified custodian must only "be familiar with the record keeping procedures of the organization." *United States v. Baker*, 458 F.3d 513, 518 (6th Cir. 2006) (citation omitted). He or she "need not have personal knowledge of the actual creation of the document." *United States v. Adefehinti*, 510 F.3d 219, 325 (D.C. Cir. 2007) (citation omitted). All that is necessary is that the records witness can "explain the system of record keeping and vouch that the requirements of the Rule 803(6) are met." *United States v. Belloc-Hernandez*, 667 F. App'x 507, 508 (5th Cir. 2016). A "qualified witness" under Rule 803(6) "is broadly interpreted" such that the Rule requires "only

---

4       Both certifications meet the standard of Section 3505, but the government confines its argument to the second certification as it was the basis for the Court's prior ruling in *Abu Khatallah*. Mem. Opn. at 10-13.

that the witness understand the record-keeping system." *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993).

The CEO is a qualified record custodian under this standard. His position as the Chief Executive Officer provided him access to the records of customers, including the records for phone number 218926390532. The CEO was able to access additional subscriber records for the phone number and discuss the systems abilities and limitations. He was a long-time employee of the company, had designed the format for Libyana's records, and was able to recognize the design of the subscriber information in the phone records. The CEO knew unique information present in the records (*i.e.*, that certain phone number prefixes were assigned to Libyana), further demonstrating his qualifications.

Nothing more is required for admissibility. "There is no requirement that the witness who lays the foundation for admission of a business record be able to personally attest to its accuracy." *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015); *see also United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013) (stating that it was "incorrect" that a record custodian "was required to confirm the accuracy of the records in order to be a qualified witness"). Although the CEO was unable to go back and check the records line by line against his database due to unrelated database corruption, he was able to confirm the records by identifying features of the records unique to Libyana. There is no requirement that the custodian personally verify each entry in the records. *See* Mem. Opn. at 12; *see also Adefehinti*, 510 F.3d at 325 ("'[The] custodian [of the record] need not have personal knowledge of the actual creation of the document.'" (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000))).

Nor does the admission of business records violate the Defendant's right to confront the witnesses against him. U.S. Const. Amend. VI. This right applies only to evidence that is

"testimonial." *Michigan v. Bryant*, 562 U.S. 344, 354 (2011). "Business and public records are generally admissible absent confrontation" because "they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009); *Crawford v. Washington*, 541 U.S. 36, 56 (2004) (business records "by their nature were not testimonial"). Phone records, such as these, are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial" and their admission, therefore, does not affront the Confrontation Clause. Mem. Opn. at 20 (citing *United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011) ("phone records are business records")); *see also United States v. Green*, 396 Fed. App'x 573, 574-75, 2010 WL 3401485, at *2 (11th Cir. 2010) ("[B]ecause the [cell phone] records were generated for the administration of Metro PCS's business, and not for the purpose of proving a fact at a criminal trial, they were non-testimonial . . . .").

## B.      The phone record certification is also admissible.

Likewise, the phone record certification is admissible at trial. Certifications are created for purposes of identifying and authenticating business records. The certifications are not themselves substantive evidence against a defendant. "The statements do not purport to convey information about [the defendant], but merely establish the existence of the procedures necessary to create a business record." *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (no error that the "written certification entered into evidence"). "It is the records, not the certification, that are introduced as substantive evidence against the defendant during trial." *United States v. Edwards*, No. 11-129, 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012). The certification is admissible part and parcel to the underlying business records in order to identify the business records to the jury. *E.g.*, *United States v. Senat,* 698 F. App'x 701, 706 (3d Cir. 2017) ("[T]he bus schedule was properly admitted with a certification under Rule 902(11), and it was not necessary that the witness

introducing the document otherwise authenticate it."); *Edwards*, 2012 WL 5522157, at *1 ("The Government subsequently introduced certain records at trial with the certifications."); *United States v. Hudson*, No. 09-171, 2011 WL 5335569, at *1 (E.D. La. Nov. 7, 2011) (permitting admission of the certificates to lay the foundation for the underlying records); *United States v. Mallory*, 709 F. Supp. 2d 451, 452 (E.D. Va. 2010) ("The tracking record and accompanying certification were thus admitted into evidence.").

Admission of the certification does not violate the Confrontation Clause under the Supreme Court's precedent in *Melendez-Diaz*. The Court specifically noted that a certificate of authentication, "though prepared for use at trial," is not considered testimonial and thus does not implicate the Confrontation Clause. *Melendez-Diaz*, 557 U.S. at 322. "A clerk *could by affidavit authenticate* or provide a copy of an otherwise admissible record" without violating the Confrontation Clause. *Id.* at 322-23 (emphasis added). The Court differentiated an affidavit of authentication, which "purports to authenticate or reproduce an otherwise admissible record," from the documents at issue in that case—forensic chemist "certificates of analysis" attesting to the "results of the forensic analysis performed" on seized narcotics, the "sole purpose of [which] was to provide prima facie evidence" an element of the offense. *Id.* at 308, 311, 322-23. Only the latter violated the Confrontation Clause.

Numerous Courts of Appeals have upheld the admission of business record certifications into evidence, finding no violation of the Confrontation Clause. *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012) (finding the lab report's admitted certification attested only that it was "a true copy of the original—and not to prove the facts of the report's contents" and as such the certification was "not testimonial" (*see* Appellee Br., 2012 WL 604889, at *33 (noting the certification was on the first page of the admitted exhibit))); *United States v. Mallory*, 461 F. App'x

9

352, 356-57 (4th Cir. 2012) (finding "no right to confront a records custodian" where certificate was admitted into evidence but not sent back to jury (*see* 709 F. Supp.2d at 452 n.2 (noting the certificate was not sent back to the jury))); *United States v. Yeley-Davis*, 632 F.3d 673, 679-80 (10th Cir. 2011) (upholding the admission of phone records along with a certification because under *Melendez-Diaz* "certifications of authenticity are not testimonial"); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (noting that the exhibit admitted a trial contained "a certificate of authenticity" and stating that "given the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records do"); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (the admission of certification documents did not violate the Confrontation Clause because "a routine certification by the custodian . . . [is] not testimonial in nature" (citation omitted)).

Precedent from this Circuit, while not squarely addressing the question, is consistent. In *United States v. Adefehinti*, the trial court admitted a business record certifications for bank records into evidence. 510 F.3d at 324. On appeal, relying on *Ellis* and the parties "joint acceptance" of that decision, the Circuit found no error in the admission of the certificate under the Confrontation Clause. *Id.* at 328. Summarizing the precedent from this and other circuits, Judge Kollar-Kotelly found that record certifications are "too far removed from the 'principal evil at which the Confrontation Clause was directed' to be considered testimonial'" and permitted their admission into evidence. *Edwards*, 2012 WL 5522157, at *2 (citing *Ellis*, 460 F.3d at 920). This Court should do the same.[5]

---

[5]    *See also United States v. Abu Khatallah*, 14-cr-141, 10/18/17 PM Tr. at 2595-97 (discussing this same precedent and noting agreement therewith).

**C.      The government has met its burden under Rule 104.**

The record certification and the records themselves, as well as the prior sworn testimony about this issue and submitted here as exhibits, all show, by at least a preponderance of the evidence that the phone records are admissible business records. The government submits that the Court need not conduct a hearing on the admissibility, and can admit the records and certification on the basis of the government's submitted evidence.[6]

**III.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the court admit the phone records and certification of as evidence at trial in this matter.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
DC Bar Number 472845

By:      _____/s/_____
MICHAEL C. DILORENZO
MD Bar No. 931214 0189
JOHN CUMMINGS
DC Bar No. 986573
KAREN P. W. SEIFERT
NY Bar No. 4742342
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

---

[6]      The phone records themselves were provided in the initial discovery production on December 18, 2017. The government has also provided Defendant discovery about the manner in which the records were obtained and certified, including the certificates of authenticity and transcripts of the hearing regarding the same records held in *United States v. Abu Khatallah*, 14-cr-141 (Sept. 14, 2017).

(202) 252-7527
Michael.Dilorenzo@usdoj.gov
John.Cummings@usdoj.gov
Karen.Seifert@usdoj.gov