UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**MUSTAFA MUHAMMAD MUFTA AL-IMAM**,<br><br>Defendant. | Case No. 17-cr-213 (CRC) |

**OPINION AND ORDER**

Before the Court is the government's Motion to Admit Evidence of Other Acts pursuant to Federal Rule of Evidence 404(b). ECF No. 56. The government seeks to admit: (1) evidence regarding defendant Mustafa Al-Imam's role in an alleged kidnapping that occurred on the same night as the attacks charged in the indictment; (2) evidence regarding Al-Imam's role in an alleged kidnapping that occurred one month prior to the charged attacks; and (3) evidence regarding Al-Imam's relationship with alleged co-conspirator Ahmed Abu Khatallah in the year after the attacks. For the following reasons, the Court will allow the government to admit (1) and (3) but will reserve judgment on (2) pending a pretrial reliability determination.

Federal Rule of Evidence 404(b) prohibits the introduction of "[e]vidence of a crime wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evidence of other acts is, however, admissible for certain other purposes, including to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. The D.C. Circuit has explained that "[a]lthough stated as a restriction, the Rule is actually one of 'inclusion rather than exclusion.'" United States v. Cassell, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000)). In addition, even if the other acts

evidence is admissible under Rule 404(b), it is still subject to the requirements of Federal Rule of Evidence 403, which allows for the exclusion of evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

1. **Contemporaneous Kidnapping**

The first piece of evidence concerns an event that transpired during, or immediately after, the attack on the Mission, the first of two attacks at issue in the indictment.[1] According to the government, W-61[2] would testify at trial that, as Al-Imam was exiting the Mission, he and other members of the militia group that had been inside the Mission saw W-61 taking cell phone pictures of Abu Khatallah's truck. 404(b) Mot. at 3. The group assaulted W-61, took his cell phone, and kidnapped him. Id. They then took W-61 to their "camp," where he overheard the group, including Al-Imam, discussing a plan for what turned out to be the Annex attack. Id. at 4.

While the government seeks admission of W-61's testimony under Rule 404(b), it primarily contends that the testimony is not even subject to 404(b)'s limitations, because it "is relevant and direct evidence of the charged crimes." 404(b) Mot. at 9. "A threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes. Acts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations; acts 'intrinsic' to the crime are not." United States v. McGill, 815 F.3d 846, 879 (D.C. Cir. 2016). An act is "intrinsic to the crime," and thus outside

---

[1] For a more complete rendering of the attacks at issue in the indictment, see the Court's previous ruling on Al-Imam's motion to dismiss. Memorandum Opinion re Order denying Defendant's Motion to Dismiss Counts One through Seventeen. ECF No. 73

[2] This is the pseudonym used by the government in its motion.

404(b)'s ambit, if it is "performed contemporaneously with the charged crime" and "facilitate[s] the commission of the charged crime." Id. (quoting Bowie, 232 F.3d at 930).

Into which bucket—extrinsic or intrinsic—does this kidnapping fall? Comfortably within the latter. Al-Imam tries to resist this conclusion by arguing that W-61's testimony concerns an event that happened "long after the Mission attack" and thus could not have "facilitate[d] the commission of the [attack]." Opposition to 404(b) Evidence ("Opp."), ECF No. 65, at 3. This is wrong, for several reasons. For starters, Al-Imam's attempt to argue that the charged crime had already been completed when he interacted with W-61 is at odds with the indictment. As the government points out, the purported assault and kidnapping of W-61 occurred "before [the attackers] left the Mission, while [they] were still in the throws [sic] of determining their next steps[.]" Reply in Support of Government's 404(b) Motion ("Reply") at 2. That means that W-61 was assaulted and kidnapped *before* the attack on the Annex, and thus squarely within the acts alleged in the indictment. See Indictment ¶ 21 ("The objects and purposes of the conspiracy were . . . [t]o violently attack the Mission and the Annex[.]").

But even if the Court accepted Al-Imam's contention that the attack was all but over when W-61 was kidnapped, that would not render the episode extrinsic rather than intrinsic to the charged crime. The government argues that Al-Imam and his comrades kidnapped W-61 to prevent him from placing them "at the scene of the Attack." 404(b) Mot. at 9. It strikes the Court that an act taken to conceal a defendant's involvement in a charged crime, so as to evade punishment for the crime, constitutes an act taken to "facilitate . . . the charged crime." McGill, 815 F.3d at 879. That is especially so when the act at issue occurred immediately after the attack. A hard cut-off like that urged by Al-Imam makes little practical sense. If Al-Imam shot and killed a witness *during* the attack to cover up his participation in the offense, testimony

regarding that would no doubt come in as intrinsic, direct evidence of his role in the attack. But because he allegedly helped carry out the kidnapping and destroyed evidence of his and Abu Khatallah's participation in the attack *immediately after* it concluded, a different result should obtain? The Court is unconvinced. That would be akin to finding evidence of a bank robber's escape extrinsic to the crime because the escape transpired after he completed the robbery by grabbing the cash and exiting the premises. The Court is aware of no case that dictates such a peculiar result. W-61's testimony is properly considered intrinsic to the charged crimes and thus falls outside 404(b)'s ambit.[3]

There remains the Rule 403 question: whether the testimony's prejudicial effect would substantially outweigh its probative value. It would not. The probative value of W-61's testimony is significant. As an apparent attempt to cover up his, or his alleged co-conspirators', role in the Mission attack, the incident provides clear evidence of "consciousness of guilt." United States v. James, 764 F.2d 885, 889 (D.C. Cir. 1985). It may also prove responsive to potential exculpatory arguments urged by Al-Imam at trial, including that he was inadvertently entangled in events at the Mission, or that he was largely an unwitting participant in the attack. See Reply at 4 (citing United States v. Monahan, 633 F.2d 984, 985 (1st Cir. 1980)). Finally, because W-61 may testify that Al-Imam and others kidnapped him at the behest of Abu Khatallah, and that he later saw and heard the group discussing the next phase of the attack on

---

[3] While the Court also suspects that much of W-61's testimony would be admissible for several non-propensity purposes under Rule 404(b)—including to probe Al-Imam's state of mind and relationship with Abu Khatallah—the Court need not reach those arguments. The Court notes, however, that if it did reach the 404(b) question, even Al-Imam admits that *some* of W-61's must be admitted, including the "testimony of interactions and relationships directly observed by W-61." Opp. at 3-4.

the Annex, this evidence is probative of the relationship between co-conspirators—and especially that between Al-Imam and Abu Khatallah, which is a key theme of the prosecution.

Al-Imam's attempt to undermine the probative value of the evidence is unavailing. He contends that because there could have been innocent alternative explanations for why he assaulted and kidnapped W-61, the act does not *necessarily* or *inevitably* show that he did so because of his participation in the attack on the Mission. Opp. at 4 ("Any reasonable Benghazi resident might be concerned that photographs of his mere presence could lead to a host of adverse consequences having nothing to do with an adjudication of guilt."). But that there might be other plausible explanations for Al-Imam allegedly having assaulted and kidnapped W-61 and destroyed photographic evidence of the attack does not change the fact that one possible explanation for it was Al-Imam's desire to conceal his and his comrades' participation in the attack. Which explanation to accept will be for the jury to decide. If the jury drew the inference that the government will invite in closing statements, then the kidnapping and evidence-destruction would certainly go to Al-Imam's intent and consciousness of guilt. Al-Imam, of course, will be free to attack this theory in front of the jury, but that does not earn him the right to exclude the evidence in the first place.

Al-Imam persists that the probative value of the testimony is further weakened because it is "particularly susceptible to impeachment." Opp. at 5. He notes that W-61 has given divergent accounts of how he ended up at the AAS camp, and that this will undermine any utility his testimony has. But while that might make his account of a kidnapping questionable, his account regarding Al-Imam initially confronting him, assaulting him, and taking his phone has apparently remained consistent. Moreover, that W-61's testimony will be vulnerable to a vigorous impeachment effort by the defense to some degree cuts against Al-Imam's Rule 403 argument—

for if counsel's impeachment effort is at all successful, it will no doubt lessen the prejudicial effect of W-61's testimony. Indeed, putting on a witness that turns out to have serious credibility concerns may well hurt the government's case more than it helps it.

At any rate, whatever prejudicial effect W-61's testimony may have, it does not *substantially outweigh* its probative value. Al-Imam complains that the violent attack W-61 will recount sounds far worse than what the indictment alleges, because the indictment "does not allege that Al-Imam took or directed any violent acts himself." Id. at 6. This is unconvincing. It does not appear that W-61's anticipated testimony will include any particularly galling details about Al-Imam's treatment of him. W-61 was released after a brief detention, and his captors even gave him his phone back, apparently intact. And while the details offered regarding the initial assault on W-61 are sparse, the government represents that W-61 was "released without substantial injury." Reply at 6. Meanwhile, Al-Imam has been charged with conspiring to attack the Mission and Annex, attacks which resulted in the violent deaths of four Americans. Thus, Al-Imam has it backwards: W-61's testimony concerns an event that is *less* inflammatory than the attacks charged in the indictment, regardless of what role Al-Imam played in perpetrating the charged offenses. See United States v. Mahdi, 598 F.3d 883, 892 (D.C. Cir. 2010) (rejecting defendant's 403 argument where the contested evidence "paled alongside the extreme violence of the acts of which Mahdi was indicted and convicted"). Because the prejudicial impact of W-61's testimony will not substantially outweigh its probative value, the Court will permit it.

2. **Month-Prior Kidnapping**

The government also wishes to admit testimony by the victim, V-1,[4] of an August 2012 kidnapping. V-1's anticipated testimony will be that Al-Imam was among a group of men who

---

[4] This is the pseudonym used by the government in its motion.

kidnapped, interrogated, and tortured V-1, and that Al-Imam made various statements reflecting an anti-American animus during these interactions. The government contends this testimony is admissible under 404(b) for the purpose of showing Al-Imam's state of mind and is "especially probative of the depth of Defendant's animus and his willingness to act thereupon." 404(b) Mot. at 13. Al-Imam responds that V-1's anticipated testimony is "highly suspect"—because it is inconsistent with statements V-1 made closer in time to the alleged kidnapping—and that its graphic and violent details would cause him undue prejudice. He therefore urges the Court to exclude the testimony under Rule 403.

      The Court agrees with the government that testimony regarding Al-Imam's alleged expressions of anti-American animus would likely go to his state of mind and motive for participating in the Mission and Annex attacks. See Abu Khatallah, 14-cr-141, 404(b) Op. and Order, ECF No. 318 at 4 ("Evidence that the defendant harbored anti-American animus . . . provide proof of a reason for the defendant to participate in the attack."). That portion of V-1's testimony, then, appears permissible under Rule 404(b). But because Al-Imam has raised significant questions regarding the veracity of V-1's testimony and its potential prejudicial effect, the Court will reserve judgment on admissibility pending a hearing outside the presence of the jury to examine the anticipated testimony in greater detail. The Court will note, however, that the more graphic details of the alleged incident would appear to raise serious concerns under Rule 403, notwithstanding the credibility of V-1's testimony.

    **3. Post-Attack Relationship Between Al-Imam and Abu Khatallah**

      Last, the government intends to admit testimony by a cooperating witness, Ali Majrisi, that in late 2012 or early 2013 he met Al-Imam at Abu Khatallah's home, where the latter introduced Al-Iman as a trusted and close friend. Majrisi will also testify that in 2013 he saw Al-

Imam transport weapons at Abu Khatallah's direction and observed him standing guard outside Abu Khatallah's home.  The government contends that this evidence will help elucidate the "illegal relationship between the participants in the crime."  404(b) Mot. at 14 (quoting Straker, 800 F.3d at 590).  Al-Imam makes various points in response.  First, he says that because this evidence concerns events postdating the charged conspiracy, it cannot shed light on how the charged conspiracy developed or the relationships between the co-conspirators pursuant to that conspiracy.  Al-Imam 404(b) Opp. at 13-14.  Second, he says the evidence concerns acts of a totally different character than the charged conspiracy and thus "ha[s] no bearing on any issue relevant to the charged attacks."  Id. at 14 (noting that testimony does "not involve criminal activity, much less a violent attack on a diplomatic compound").  For the same reasons, even if the testimony does go to some valid non-propensity purpose, Al-Imam contends it should still be excluded under Rule 403.

       The Court will permit the government to introduce this evidence for the limited purpose of establishing the relationship between Al-Imam and Abu Khatallah.  The government's theory in the case appears to be that Al-Imam acted in service of or at the direction of Abu Khatallah in carrying out the attacks on the Mission and the Annex.  The fact that Majrisi met Al-Imam through Abu Khatallah some three months after the attacks, and at some time thereafter observed Al-Imam moving weapons on Abu Khatallah's behalf and standing guard outside his home, is probative of the relationship between the alleged co-conspirators.  It would, as the government says, "give context to [Al-Imam's] conduct during the attack [,] . . . show that Defendant was part of the group that conspired in the Attack [,] . . . [and] show that Defendant was under Khatallah's control during the Attack[.]"  Reply at 11; see also McGill, 815 F.3d at 879 (explaining that D.C. Circuit has permitted "other acts evidence in conspiracy cases to . . . link a

8

defendant to other defendants, . . . show the nature of a conspiracy . . . , [and] to show the defendants' intent to act in concert").

Al-Imam makes too much of the fact that Majrisi's testimony concerns Al-Imam's relationship with Abu Khatallah *after* the Mission and Annex attacks. Opp. at 13 (suggesting that relationship evidence is only admissible to the extent is shows "how the illegal relationship between the participants in the crime *developed*" (quoting Straker, 800 F.3d at 590)). Contrary to Al-Imam's suggestion, however, 404(b) "does not automatically bar evidence of a bad act that occurred subsequent to the crime charged," even if it "attenuates the relevance of such proof[.]" United States v. Watson, 894 F.2d, 1345, 1349 (D.C. Cir. 1990); see Abu Khatallah, 14-cr-141, 404(b) Op. and Order, ECF No. 318 at 7 ("[T]he probative value of this evidence is lessened in that it relates to post-attack statements[.]"). The D.C. Circuit has affirmed the admission of 404(b) evidence that postdated the charged crime by ten weeks, United Sates v. Manner, 887 F.2d 317, 321-22 (D.C. Cir. 1989), and three months, Watson, 849 F.2d at 1349. That is roughly the same amount of time that elapsed between the September 2012 attacks and Majrisi being introduced to Al-Imam by Abu Khatallah.[5] Although Manner and Watson involved other acts that were probative of state of mind, rather than the relationship between co-conspirators, the Court can see no reason why a different rule should obtain in the latter scenario.

Al-Imam searches in vain for another reason to exclude Majrisi's testimony. He says that even if subsequent acts may sometimes be admissible under 404(b), that is only appropriate where they are substantially similar to the charged offense. And he argues that the subsequent acts here—being introduced as Abu Khatallah's close friend, moving weapons on Abu

---

[5] Exactly when Majrisi saw Al-Imam assisting with weapons and standing guard outside Abu Khatallah's home is not clear. See Reply at 10 n.2

Khatallah's instructions, and standing guard outside of Abu Khatallah's house—are a far cry from his alleged role in the "politically-motivated, violent attack on a foreign consulate" that is the subject of the indictment. Opp. at 15. The Court disagrees. It is true that courts should be more comfortable admitting 404(b) evidence despite a time gap where "the degree of similarity between the acts is strong." United States v. Hassanshahi, 195 F. Supp. 3d 35, 45-46 (D.D.C. 2016). But the relevant similarity here is the dynamic between Al-Imam and Abu Khatallah, not the discrete actions Al-Imam took on Abu Khatallah's behalf. Remember, the government wants to admit this evidence primarily to show the relationship between Al-Imam and his alleged co-conspirator, Abu Khatallah. While the acts Majrisi will testify about are different from the Mission and Annex attacks, in *every* instance Al-Imam was apparently acting at the behest of Abu Khatallah. That the two maintained a close relationship in the months *after* the Mission and Annex attacks, with Al-Imam (in the government's view) ready to do what Abu Khatallah asked of him, tends to show that the two might have been in a similar superior-subordinate relationship at the time of the attacks. And contrary to Al-Imam's suggestion otherwise, Opp. at 14, this does not render the evidence impermissible propensity evidence. Rule 404 prohibits the use of evidence to establish a defendant's "character" or a specific "character trait" to show that a defendant acted in conformity with that character trait in carrying out the charged crime; the other acts evidence here does not establish any particular character trait of Al-Imam's but rather shows that he was in a particular hierarchical relationship with Abu Khatallah.

Finally, admitting this evidence is not in tension with the Court's prior ruling in Abu Khatallah. There, the Court excluded testimony regarding an alleged plot to kill the next American ambassador to Libya and an Abu Khatallah order to kill an American teacher in Benghazi because they "occurred well after the attack and after the charged conspiracy ended"

10

and as such would "do little to illuminate the formation and contours of the conspiracy." Abu Khatallah, 14-cr-141, 404(b) Op. and Order, ECF No. 318 at 7. But that decision was made on Rule 403 grounds; the other acts were particularly prejudicial, and they did little to elucidate the contours of the conspiracy. The 403 balancing comes out much differently here. On the probative side of the scale, Abu Khatallah's relationship with particular co-conspirators was not essential to the government's theory in that earlier case. Here, by contrast, the government believes Al-Imam's role in the charged offenses is largely explained by his close affiliation with Abu Khatallah, making this 404(b) evidence more probative of guilt. As for prejudice, the testimony excluded by the Court in Abu Khatallah involved plots to commit further acts of violence against American citizens—events far more likely to stoke juror passions than the relatively tame and perhaps even non-criminal actions the government seeks to introduce here.

\* \* \*

For the foregoing reasons, the Court will allow the government to admit evidence regarding the assault and kidnapping of W-61 and evidence regarding Al-Imam's relationship with Abu Khatallah in the months following the attack on the Mission and the Annex. The Court will, however, reserve judgment on the admissibility of V-1's testimony concerning Al-Imam's participation in his kidnapping and interrogation.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: April 8, 2019