## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     v.<br><br>MUSTAFA AL-IMAM,<br><br>        *Defendant*. | Crim. No. 17-cr-213 (CRC) |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO
### PROHIBIT USE OF PREJUDICIAL LANGUAGE AND EVIDENCE AT TRIAL

Defendant Mustafa Al-Imam respectfully submits this reply in support of his motion for an order prohibiting the use of certain language that would be unfairly prejudicial, confusing, and deny him the right to a fair trial.

In Khatallah, the Court held that "some of the government's tactics and statements crossed th[e] line . . . 'beyond the rhetoric permissible in the 'heat of argument' and into the realm of the constitutionally infirm.'" 6/15/2018 Order at 22, United States v. Khatallah, No. 14-cr-00141 (ECF No. 528). The government had "continued to use 'our' numerous times after the Court's instruction" not to do so, id. at 24; "repeatedly referred to the victims as 'American sons' or 'our sons' during rebuttal argument, id.; called the defendant a "stone cold terrorist" as an to "appeal to 'passion and prejudice,'" id. at 25 (quoting United States v. DeLoan, 504 F.2d 185, 193 (D.C. Cir. 1974)); and "inappropriate[ly] . . . 'encourage[d] the jury to focus on the conduct and role of [opposing counsel]' rather than the strength of her arguments or the evidence presented," id. at 27 (quoting United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005)). This time, the Court should take prophylactic steps to prevent a repeat performance.

1

Given these specific concerns, our motion does not, as the government suggests, try to police the "infinite number of permutations of arguments" the government may use at trial. Gov. Br. 5. Instead, it asks the Court to lay down specific boundaries around specific issues that we know are likely to come up—and thus to prevent the type of boundary crossing that took place in Khatallah. Curative instructions—provided to the jury after violations—are no substitute for preventing flagrant violations in the first instance; instructions might mitigate prejudice from trial violations, but do not erase it. See 20 Am. Jur. Trials 441 § 20 ("The damage [improper rhetoric] can inflict on a party's legal position may be irreversible even if they are used but once in front of the jury"). And whatever the availability or effectiveness of curative instructions for new issues that arise, there is no reason to "hold Defendant's [current] objection[s] in abeyance" with respect to conduct that has already taken place and is almost certain to recur. Gov. Br. 5.

> A. **The Court should limit the government's use of the words "terrorist," "terrorism," "extremist," and "extremism," and exclude testimony drawing improper conclusions about the political beliefs of others as "terrorist" or "extremist."**

As deployed by the government in Khatallah, "terrorism" and "extremism" were empty words, devoid of useful meaning, used exclusively to prejudice the jury against the defendant and certain people with whom he associated. Here again, the government has failed to demonstrate that such terms will do any useful work at all, and thus should be barred except in the rare circumstances in which their use is unavoidable.

> i. The Court should reiterate its Khatallah instruction "to avoid gratuitous or unnecessary use" of these terms.

In Khatallah, the Court "instruct[ed] the Government to avoid gratuitous or unnecessary use of the terms" "terrorist" and "terrorism." 9/28/2017 Order at 1, Khatallah (ECF No. 372). Whereas the government promises to abide by the Court's Khatallah prohibition on "gratuitous or unnecessary use of the pronoun 'our,'" Gov. Br. 4, it makes no

2

such promises with respect to these other words. Quite the opposite. The government's proposed jury instructions in this case use "terrorists" more than a dozen times, ECF No. 98, and every instance of the word is both gratuitous and unnecessary: In Khatallah, neither the parties' proposed jury instructions nor the court's approved jury instructions used "terrorism" or "terrorist" at all. Joint Proposed Jury Instructions, Khatallah (ECF No. 292-1); Trial Tr. 5880–5909 (ECF No. 469). At a minimum, the Court should reiterate its prior order—verbatim.

      ii. <u>The technical definition of "terrorism" is not relevant here; its broad definition is merely pejorative.</u>

The government also insists that since "[t]he statute [e.g., 18 U.S.C. § 2339A,] uses the word 'terrorists,' . . . it would be impossible and contrived to avoid use of this word during trial." Gov. Br. 3. Not so. The charges involve specific acts (murder, attempted murder, attack, destruction of property) relating to certain classes of persons or things (internationally protected persons, officers or employees of the United States, federal facilities), and Al-Imam's alleged conspiracy with and provision of material support to those who did those underlying acts. As noted above, the Court provided clear and effective jury instructions in Khatallah without once using "terrorism" or "terrorists." Trial Tr. 5880–5909. The Court can and should do the same in this case.[1]

Far from faithfully tracking the statutory definition of "terrorism," the government in Khatallah used an overbroad definition: the use of violence to advance political goals. Trial Tr.

---

[1] The statutory definition of "terrorism" includes an element of intent that is not required under any of the charged statutes: the act must "appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. § 2331(1), (5). Using that definition would be confusing.

550:9–11 ("This, ladies and gentlemen, is a terrorism case, plain and simple. This is a case about Khatallah using violence to advance his political goals."). In the government's formulation, Khatallah was a terrorist because he "attempted to use violence (burning down the Special Mission) to achieve a political goal (coercing America into leaving Benghazi)." Gov. Br. 2, Khatallah (ECF No. 243). That expansive formulation, however, would apply to, say, every member of the United States military—among many others.

By using such an overbroad definition, the government would inflame the passions of the jury. See Conor Friedersdorf, Is One Man's Terrorist Another Man's Freedom Fighter?, The Atlantic (May 16, 2012), https://bit.ly/2OSkppL (describing how "terrorist" is rarely used in the technical sense, but "as a pejorative to vilify the actions only of groups one wishes to discredit"). Thus when the government twice stated in closing that the attack on the Special Mission was "a violent terrorist attack," Trial Tr. 5974:18–19, 5989:11, the adjective "terrorist" supplied purely emotional emphasis; the government did not need to prove that the defendant's alleged acts met the definition of "terrorism" in a statute under which the defendant was not charged.

Remarkably, the government claims that—unlike phrases like "Pontius Pilate" and "the Godfather"—the term "terrorist" cannot be used "to insult the defendant." Gov. Br. 3. But that is precisely how the government used it when it called Khatallah a "stone cold terrorist"—an insult that earned an admonition from the Court. See 6/15/2018 Order at 25, Khatallah (ECF No. 528) (the phrase was an to "appeal to 'passion and prejudice'") (quoting United States v. DeLoan, 504 F.2d 185, 193 (D.C. Cir. 1974)).

Similarly, one witness referred to Khatallah as "a terrorist" and said that he "leads terrorist groups and organizations." The court properly excluded the former testimony as impermissible character evidence and hearsay and instructed the jury that the latter statement

4

could be used only to establish that the witness recognized the defendant. 10/10/2017 Order, at 12, Khatallah (ECF No. 397). The court instructed the jury:

> Ladies and gentlemen, while we're here, in response to the last question as to whether he could identify Mr. Khatallah, you heard the witness say that Mr. Khatallah leads terrorist groups and organizations. You may use this statement only for purposes of the witness's identification; in other words, whether he recognized and could identify a photo of the defendant. You may not use the statement for any other purpose, and you may not use the evidence to conclude that the defendant has a bad character or that he has a criminal personality.

Trial Tr. 2089:12–21. Knowing that this kind of inflammatory language was used in the last trial, prudence dictates that the Court instruct the parties—in advance—to take steps to avoid repetition.[2]

The same problems infect the subjective words "extremism" and "extremist." Indeed, the government applied the same overbroad definition of "extremist agenda" that it used for "terrorism": "by 'extremist agenda' I mean a group that tried to achieve its political goals through violence." Trial Tr. 551:18–21. Again, if that were the actual definition of "extremist," it would apply to the U.S. military as well. Obviously, that is not what the government meant or how the jury would understand it.

    iii. <u>The labels "terrorist," "terrorism," "extremist," and "extremism" are not permissible lay opinions.</u>

Finally, the government also insists that lay opinion describing a person or group as "terrorist" or "extremist" is necessary, because "evidence of Defendant's participation in a group known to be extremist or supporting terrorism is relevant and direct evidence of the charged

---

[2] It may well be difficult to avoid using "terrorist" when a witness identifies his or her job description, job title, or division. See, e.g., Khatallah Trial Tr. 1372:3–5 ("supporting counterintelligence and counterterrorism investigations"); id. at 1374:4–5 ("joint terrorism task force"); id. at 1869:21–22 ("New York counterterrorism division"); id.. at 2245:7–8 ("Supervisory Special Agent within the counterterrorism division"); id. at 4514:5–6 ("Terrorist Explosive Device Analytical Center"). Even then, the government should not use those words in its questions, because doing so would imply that this case is a "terrorism case."

crimes, as it shows identity and motive." Gov. Br. 3. Specifically, the government intends "to call lay witnesses to give their perception of groups operating in Libya at the time of the attack on the U.S. Mission and Annex" as "extremist" or "terrorist." Id.

Such lay opinions, however, are inadmissible. Lay opinions must be (1) rationally based on the witness's perception; (2) helpful to the jury in understanding the witness's testimony or the determination of a fact in "issue"; and (3) not based on the kind of specialized knowledge possessed by experts within the scope of Rule 702. See United States v. Hampton, 718 F.3d 978, 981 (D.C. Cir. 2013). The government cannot meet any of these requirements.

First, personal observations do not justify broad opinions about the beliefs or ideologies of entire groups. Lay opinions are inadmissible "[w]hen a witness has not identified the objective bases for his opinion . . . , first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." Id. (citing United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992)). If the witness fails to describe all of the observations and reasoning he or she relied on in arriving at the lay opinion, such opinions may be "'based upon information not before the jury, including hearsay'"—thus "'usurp[ing] the jury's function.'" Id. at 983 (quoting United States v. Grinage, 390 F.3d 746, 750–51 (2d Cir. 2004)).

Indeed, the two Khatallah examples cited by the government underscore the dangers of allowing such testimony. See Trial Tr. 4503:5–9 ("Q: [W]hat is Ansar Al-Sharia? A: It is an armed group that does not work or operate under the supervision of the government. They are extremists.") (cited at Gov. Br. 3) (providing no basis for this opinion); id. at 4949:2–3 ("And some of these groups, such as the brigade of Ahmed Abu Khatallah, had an extremist ideology. They felt that they are the only ones who are right . . . .") (cited at Gov. Br. 3) (apparently

6

speculating about the feelings of others). Neither opinion remotely met this disclosure requirement, leaving the jury to simply take the witness's word for the epithet's applicability and to guess at its meaning.

Second, the pejorative "terrorist" and "extremist" labels do not help the jury find any contested fact. When "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule." Fed. R. Evid. 701 advisory committee's note. Once a lay witness has described his or her personal observations, the jury has no need to hear the witness's opinion that certain views are "extreme" or that such acts are "terrorism." These labels are a far cry from the canonical examples of Rule 701 evidence, such as "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.'" Fed. R. Evid. 701 advisory committee's note to 2000 amendment (quoting Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1196) (3d Cir. 1995)).

Third, "'a lay opinion must be the product of reasoning processes familiar to the average person in everyday life.'" United States v. Williams, 827 F.3d 1134, 1160 (D.C. Cir. 2016) (quoting United States v. Garcia, 413 F.3d 201, 215–16 (2d Cir. 2005)). But if the lay witness's reasoning is not disclosed, the jury may conclude that the opinion resulted from "specialized knowledge." And that type of opinion is admissible under Rule 702 only, but the government has provided no notice of such an expert.

    **B.    The Court should hold the government to its promise to "in no way suggest that Defendant was involved in the attacks of September 11, 2001."**

The Government promises to avoid suggesting that the incidents at issue in this case related to the attacks of September 11, 2001. Gov. Br. 4. But excessive use of "September 11" or

7

"9/11," especially near the word "terrorism" or "terrorist," will create just such an association. Although we do not seek to prohibit "September 11" and "9/11" completely, the Court should state in advance that excessive use of those phrases may inflame the passions of the jury.

### C. The government appears not to object to the Court reiterating its limited prohibition on the pronoun "our."

The government appears to concede that in Khatallah, the Court's order respecting the pronoun "our" was appropriate. Yet the government inexplicably asks the Court to hold our identical objection in abeyance and then issue curative instructions if and when the government again crosses the line. Gov. Br. 5.

The government should not get yet another opportunity to inflame the jury. In Khatallah, the government continued to improperly use the pronoun "our" several times after the Court specifically ordered them not to. A Court order was not sufficient to prevent government misconduct in Khatallah, but it is a start. Doing nothing until the government crosses the line yet again is nowhere near sufficient.

### D. Evidence about a burned American flag spotted on the Special Mission grounds, if admissible at all, should be limited.

If the Court concludes that testimony about the remnants of a burned American flag are sufficiently tied to Al-Imam to be relevant and admissible (and not unduly prejudicial) to show anti-American sentiment and motive, such testimony should be limited. Extended testimony about the flag and its appearance, and showing the flag to the jury, transcends the mere presentation of evidence and becomes an unfairly prejudicial appeal to patriotism. If not excluded entirely, presentation of such evidence should be as limited as necessary given the government's theory of relevance.

> E. **The government appears to concede that careless references to "the government of Libya" would be prejudicial in light of the time period's "complex political dynamics."**

Our motion sought an order requiring, whenever possible, that political or organizational affiliations be identified by name, without falsely implying that such an affiliation involved the non-existent (or highly contested) status of such entities or organizations as being part of "the government of Libya." The government offers no reason why the prosecutors would need to use that phrase. Gov. Br. 6.

As for witnesses, the government promises to "address these political distinctions with [any] witness, . . . [t]o the extent it is within a witness's personal knowledge and based on a proper foundation." Id. This constitutes an implicit acknowledgement that the order requested is appropriate. Whenever possible—and especially when guided by attorney questioning—effort should be made to identify specific group affiliations, without implying that a person or group acted on behalf of "the Libyan government."

> F. **The government concedes the appropriateness of guidelines excluding character evidence of victims.**

In Khatallah, the Court prohibited certain "testimony about positive aspects of the victims' lives and their character, which were irrelevant to the charged crimes and any defenses to them." 6/15/2018 Order, at 26, Khatallah (ECF No. 528) (citing numerous sustained objections to government attempts to elicit such testimony). Here, the government promised to conform to those same guidelines, Gov. Br. 6–7, conceding that Al-Imam's motion is appropriate.

**G.     The government concedes that it may not denigrate CIPA stipulations as "words on pieces of paper."**

The government concedes that the Court's CIPA-stipulations ruling in <u>Khatallah</u> was appropriate, and promises to abide by the Court's guidance in that case. The Court should issue a new order incorporating its former guidance.

## CONCLUSION

Al-Imam respectfully requests an order prohibiting or limiting the evidence and language as described above.

April 8, 2019                                                                Respectfully submitted,

/s/ Timothy R. Clinton
Matthew J. Peed (D.C. Bar No. 503328)
Timothy R. Clinton (D.C. Bar No. 497901)
CLINTON & PEED
777 Sixth Street NW, 11th Floor
Washington, DC 20001
(202) 621-1828
(202) 204-6320 (fax)

*Counsel for Defendant Mustafa Al-Imam*