**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No.: 17-CR-213 (CRC)** |
| | : | |
| **MUSTAFA MUHAMMAD MUFTAH** | : | |
| **AL-IMAM,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' REPLY TO DEFENDANT'S OPPOSITION TO**
**MOTION *IN LIMINE* TO ADMIT PHONE RECORDS**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia, respectfully replies to Defendant Mustafa Al-Imam's opposition to the government's Motion *in Limine* to admit as evidence at trial phone records of Libyana Telecommunications ("Libyana") and the certification of the same. *See* Motion *in Limine* at 1 (ECF No. 78). In his Opposition, Defendant incorrectly argues that the Chief Executive Officer (CEO) of Libyana could not certify that the phone records were an original or duplicate of Libyana's records. Def. Opp. at 1, 5 (ECF No. 95). But the CEO examined various features of the records and concluded that the records were generated from Libyana's system of records, and moreover other evidence extrinsic to the records confirms that they are in fact an original or duplicate. Additionally, Defendant's assertion (at 8) that the CEO's record certification is testimonial in nature is contrary to Supreme Court precedent explaining that evidence is testimonial where it is offered to prove an element of the offense. Such is not the case with the CEO's certification here, which merely attests to the fact that the records are, in fact, Libyana's business records. Defendant's remaining claims go to the weight, not admissibility, of the evidence, and as such both the records and the certification should be admitted at trial.

**ARGUMENT**

I.     **A preponderance of the evidence shows that the records are original or duplicates of Libyana's phone records, and thus are admissible.**

The phone records are admissible if a preponderance of the evidence shows that they are what they purport to be: telephone records of Libyana Telecommunications ("Libyana"). *Bourjaily v. United States*, 483 U.S. 171, 176 (1987) (discussing standard). In *United States v. Khatallah*, this Court found that the same phone records were admissible under this standard. 9/21/2017 Mem. Opn. at 11, *United States v. Khatallah*, No. 14-cr-00141 (ECF. No. 370) (hereinafter "9/21/17 Mem. Opn."). Defendant now argues that this Court erred in that finding because the Libyana CEO was unable to certify that the records were an "original or duplicate," as he could not compare the records to the Libyana database and ensure their accuracy.

A preponderance of the evidence, from both the Libyana CEO and other witnesses, indeed shows that the records are an original or duplicate of Libyana's telephone records. Evidence from the Libyana CEO is sufficient for this showing. First, the CEO noted that the visual appearance of the records matches that of Libyana's records. Specifically, the Libyana CEO told FBI Agents that the format of the records and the "profile page" listing subscriber information were consistent with the company's records, and in fact, the "profile page" is a design unique to Libyana. Motion Ex. A at 74:17-19. Second, the CEO stated that data within the records themselves is consistent with Libyana's records. Specifically, the Libyana CEO told FBI agents that the phone number at issue began with a prefix (-092) that only Libyana serviced. *Id.* at 75:2-17. Third, the Libyana CEO confirmed that the phone number at issue was, in fact, serviced by Libyana when the CEO later pulled records for that same phone number out of Libyana's system. *Id.* at 81-83. Fourth, the CEO confirmed that the subscriber information for the phone records matched that listed in

the Libyana database. *Id.* at 80. Confronted with all this evidence, the Libyana CEO certified the records' authenticity.

Additionally, the Court can also rely on other evidence showing that the records are an original or duplicate of Libyana's records. Specifically, witnesses have independently corroborated the records through their statements. Ahmed Abu Khatallah, who was using the phone number at issue on September 11-12, 2012, told the FBI that on September 11, 2012, he had two phone calls with phone numbers ending in -8891 and -1530. Ex. A at 86-89. Both of those calls are listed in the phone records. *Id.*; *see also* Motion Ex. C at 3433 (line 1577, 9/11/12 20:39:25); *id.* at 3434 (line 1608, 9/11/12 at 20:20:11). Defendant himself told the FBI that he has utilized two phone numbers (ending in -0270 and -5935). *See* Def. 11/6/2017 Statement at 1 (*attached hereto as* Ex. F). Defendant claimed that on September 11, 2012, he met Khatallah around 5:00 pm, and was with Khatallah at the U.S. Mission in Benghazi and later at an Ansar Al-Sharia (AAS) camp. *Id.* at 3. Defendant also stated that he did not talk to Khatallah that night after leaving the AAS camp. *Id.* at 3. Defendant's own statements corroborate the phone records, which show five calls between Defendant's -5935 number and Khatallah's phone number on September 11, 2012 between 17:23 and 22:44, and then no calls for the remainder of the night or the next day. *See* Motion Ex. C. at 3433-34 (lines 1555, 1585, 1609, 1613, 1615).

Moreover, the Court has additional evidence about how the records were obtained which shows that the records are an "original or duplicate" of Libyana's phone records. *See* Motion Ex. B (filed under seal). The evidence in Exhibit B provides a factual basis to support the origination of the records from a reliable source. The evidence in Exhibit B also explains the timing of the records' receipt and disinterested nature of the parties involved in generating them. Although

Defendant repeatedly suggests that the records were obtained in an "*ultra vires* manner," (Opp. at 4, 5, 7), such a characterization is at odds with the evidence in Exhibit B, which provides the Court with evidence from "those who participated in, or are otherwise familiar with, the creation of *this spreadsheet*" (Opp. at 6). Given all the aforementioned sources, this Court has ample evidence to find that the records are, in fact, the telephone records of Libyana.

Defendant essentially argues that the records cannot be authenticated as "originals or duplicates" because of the manner in which they were generated. But Defendant concedes (at 6) that "if records are not printed or copied through a regular process that the witness can authenticate, *there must be some way* for the witness to determine that the records are originals or duplicates." Here, that is exactly what the Libyana CEO did—he compared the format, style, and substance of records to those he knew to be from Libyana's system, and further checked the records against what was available in Libyana's database for the same phone number. It was impossible for the CEO to check the records line by line against the company's database due to the unrelated corruption of records from the relevant time period. Contrary to Defendant's arguments (at 5), such a line by line comparison is not required, despite how the records were obtained. *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015) (no requirement for the custodian to be able to attest to the accuracy of the business record); *United States v. Adefehinti*, 510 F.3d 319, 325 (D.C. Cir. 2007) (citation omitted) (custodian "need not have personal knowledge of the actual creation of the document").

Furthermore, other courts have admitted copies or informal records when, similar to this case, the business's original records were destroyed or unavailable. In *United States v. Prevatt*, 526 F. 2d 400, 403-04 (5th Cir. 1976), the defendant, a funeral home operator, was convicted of income tax evasion. The funeral home's official records and an employee's notebooks had

"mysteriously disappeared" during the Internal Revenue Service's investigation into the defendant. *Id.* at 403. The Circuit upheld the admission of a copy of an employee's notebook at trial as a business record, despite the fact that it could not be compared to the original record. *Id.* *Cf. United States v. Ross*, 33 F.3d 1507, 1514 (11th Cir. 1994) (upholding admittance of transcripts after original recordings of foreign wire taps were destroyed by the Spanish police in the ordinary course). It cannot be, as Defendant would have it, that in instances when original business records are damaged or destroyed, copies of those records that otherwise exist can never be certified by the business's records custodian. Where, as here, the record custodian is able to ascertain enough reliable indicators of the records authenticity, the records should be admissible as the business's records.

Defendant's remaining arguments go to the weight, not admissibility of the records. Throughout his brief, Defendant protests that the records are a "manipulatable spreadsheet" and that the CEO cannot state that the spreadsheet "has not been manipulated either immediately after its download from Libyana's system, or in the five years since it was created." Opp. at 6 & n.1.[1] Courts are clear, however, that the record custodian need not attest to the record's accuracy. *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015) (no requirement for the custodian to be able to attest to the accuracy of the business record); *see also, e.g.*, *United States v. Caruso*, 225 F.3d 646, 2000 WL 1134359, at *2 (2d Cir. Aug. 9, 2000) ("The appellants' suggestion that Lambright may have altered the ledger after the scheme was over before turning it over to the government in order to minimize his own culpability, while plausible, goes to the weight to be afforded the ledger

---

[1]     The government has provided defense with evidence showing Ex. 1100 is in the same form as when it was obtained by the government and when it was shown to the Libyana CEO. Defendant's insinuations (at 5, 9) that the records were altered by the government during the "five years since it was created" are baseless.

entries, not to their admissibility."). Moreover, the fact that the records are in the form of a spreadsheet is completely consistent with Libyana's record-keeping practices, as the later records provided to the FBI by the Libyana CEO in February 2012 were in the same form. Motion Ex. A at. 81-82. Defendant's arguments about the weight the records should be given can be made through argument or by calling the FBI agents to elicit that the records were not obtained from the CEO who certified them.[2]

## II.    The record certification is reliable, not testimonial, and admissible.

As an initial matter, Defendant does not deny (at 7) the body of precedent stating that business record certifications are admissible evidence and their admission does not violate the Confrontation Clause. *See United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012); *United States v. Mallory*, 461 F. App'x 352, 356-57 (4th Cir. 2012); *United States v. Yeley-Davis*, 632 F.3d 673, 679-80 (10th Cir. 2011); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005); *see also United States v. Adefehinti*, 510 F.3d 219, 328 (D.C. Cir. 2007) (affirming the parties' reliance on *Ellis* and finding no error in admitting the certification). This Court previously noted its agreement with this precedent. *United States v. Abu Khatallah*, 14-cr-141, 10/18/17 PM Tr. at 2595-97.

Instead, Defendant wrongly argues that in the record certification at issue here is "testimonial" under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23 (2009). Defendant misunderstands the concerns animating that case. In *Melendez-Diaz*, the Court held that "evidence affidavits reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine" were testimonial documents and could not be

---

[2]    So, too, could Defendant seek to elicit the evidence in Exhibit B in order to make his arguments about the records alleged lack of accuracy.

admitted at trial without a witness. *Id.* at 307, 311. Key in the Court's consideration was the fact that the forensic drug analysis documents were offered to prove an element of the offense: "they certainly provided testimony against petitioner, proving one fact necessary for his conviction—that the substance he possessed was cocaine." *Id.* at 314. The Court drew a distinction between that document and a record certification, explaining that the "clerk's authority in [a record certification] was narrowly circumscribed . . . . He . . . had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.'" *Id.* at 322 (citing *State v. Wilson*, 75 So. 95, 97 (La. 1917)). So too, here the Libyana CEO's certification does not "furnish" any "interpretation" of the records or provide any substantive analysis of the records, and thus it is unlike the forensic drug analysis documents at issue in *Melendez-Diaz*.

Defendant's further contention that the record certification in this case is similar to an attestation that the clerk does *not* have a record is also misplaced. In *Melendez-Diaz*, the Court (in dicta) surmised that a "clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it" was testimonial. *Id.* at 323. The basis of that conclusion was because the clerk's certificate "would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched." *Id.* Thus, again, the Court's concern was for instances in which documents were being offered to as evidence of an element of the offense (*i.e.* the failure to register) without a witness being available for confrontation. There is no similar concern here; the CEO's record certification does not go to any element of the offense, but merely to attest to the admissibility of the records as business documents. *United States v. Edwards*, No. 11-129, 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012) ("It is the records, not the certification, that are introduced as substantive evidence

against the defendant during trial."). Moreover, contrary to Defendant's claim (at 8), there are no "assumptions" or "conclusions" about the "record generating process" contained in the CEO's certification of the kind present in a clerk's "no record" certification, which would document the clerk's search for the record and failure to find it. Motion Exs. D & E. The CEO's certification is devoid of a description of process. Defendant supplies (at 8) no reason to assume that the jury will presume otherwise, in contravention to the Court's instructions. *See* D.C. Jury Instr. D.C. 1.202 ("You must decide the facts based on the evidence presented in court and according to the legal principles about which I will instruct you.").

Additionally, Defendant attempts to splice the reliability of the process for admitting the records from the certification itself (at 9), claiming that the CEO's certification "lacks trustworthiness" and thus itself is not admissible as a business record. But the same facts that support the admissibility of the business record, based on the certification, also support the admissibility of the certification. As this Court held in *Khatallah*, the Libyana CEO was a "qualified person" able to attest to the accuracy of the records and used a reliable process to do so. 9/21/17 Mem. Opn. at 11-12. If the records are admissible on the basis of the certification, then the certification must itself be reliable evidence.

Finally, Defendant's Fed. R. Evid. 403 argument is misplaced as there is no unfair prejudice, let alone prejudice that substantially outweighs the probative nature of permitting the jury to understand the basis of the records' admission. Defendant argues that "the only genuine issue is whether the spreadsheet containing the records was manipulated before or after it was provided to the government" and that the certification "unfairly" "purports to answer that question." *Id.* But nothing in the certification states that the records are "accurate" and, indeed, business records are admissible despite the record custodian being unable to attest to the accuracy

thereof. *Smith*, 804 F.3d at 729. Defendant can elicit testimony calling into question the accuracy of those records (although to date he has not substantiated in any way a claim that the records were altered). *See supra* n. 1& 2. The (as of yet) baseless arguments about the records' accuracy do not diminish the admissibility of the certification. *Caruso*, 2000 WL 1134359, at *2 (stating the allegations that the business records were "altered" "goes to the weight to be afforded the ledger entries, not to their admissibility"). Moreover, the Court can easily address Defendant's Rule 403 concerns by permitting the jury to be shown the certification but not furnishing a copy of it for the jury during its deliberations. *E.g.*, *United States v. Mallory*, 709 F. Supp. 2d 451, 452 n.2 (E.D. Va. 2010).

In conclusion, the Libyana CEO's certification is the foundational document that serves to authenticate the records as Libyana business documents. If they records are admissible under Fed. R. Evid. 803, the jury should be permitted to understand why the records are admissible. "Given the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records do." *Ellis*, 460 F.3d at 927.

### III.    The government has met its burden under Rule 104.

The government has submitted evidence showing, by at least a preponderance of the evidence, that the phone records and the certification are admissible business records. The burden has shifted to Defendant to show untrustworthiness. *See Shelton v Cons. Prod. Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002). None of the arguments proffered by Defendant undermine the reliability of the evidence, nor has Defendant proffered any independent evidence of untrustworthiness. The records and the certification should be admitted, and the government asserts that the Court can so find without a hearing.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court admit the

phone records and certification of as evidence at trial.


Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
DC Bar Number 472845


By:  _____/s/_____
JOHN CUMMINGS
DC Bar No. 986573
KAREN P. W. SEIFERT
NY Bar No. 4742342
Assistant United States Attorneys
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7527
karen.seifert@usdoj.gov