1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

2

3          United States of America,          )
                                              ) Criminal Action
4                         Plaintiff,          ) No. 17-cr-213
                                              )
5          vs.                                ) JURY INSTRUCTION HEARING
                                              )
6          Mustafa Muhammad Muftah            ) Washington, DC
           Al-Imam,                           ) June 3, 2019
7                                             ) Time:  2:11 p.m.
                          Defendant.          )
8          _____

9              TRANSCRIPT OF JURY INSTRUCTION HEARING
                             HELD BEFORE
10         THE HONORABLE JUDGE CHRISTOPHER R. COOPER
                    UNITED STATES DISTRICT JUDGE
11         _____

12                    A P P E A R A N C E S

13         For the Plaintiff:      **JOHN M. CUMMINGS, ESQ.**
                                   U.S. Attorney's Office for D.C.
14                                 555 4th Street, NW
                                   Washington, D.C.  20530
15                                 (202) 252-7527

16         For the Defendant:      **MATTHEW J. PEED, ESQ.**
                                   **TIMOTHY RYAN CLINTON, ESQ.**
17                                 777 6th Street, NW
                                   11th Floor
18                                 Washington, DC  20001
                                   (202) 621-1828

19
           Interpreters:          Ghada Attieh
20                                 Aziz Erraziqi

21         _____

           Court Reporter:        Janice E. Dickman, RMR, CRR, CRC
22                                 Official Court Reporter
                                   United States Courthouse, Room 6523
23                                 333 Constitution Avenue, NW
                                   Washington, DC  20001
24                                 202-354-3267

25

1              THE COURT:  All right.  We're back on the record.

2              So, what I thought we would do is, I've flagged a

3      couple of, sort of, global issues in the instructions, as well

4      as a couple of specific instructions, just hear from you all on

5      those.  And then, based on the argument, we'll go back and

6      create a proposed set of instructions that we'll e-mail to you

7      all.  And then have you come back later this afternoon,

8      depending on the timing, or first thing tomorrow, and you can

9      lodge your objections to the -- to what we send out.  Or

10     suggest, you know, other changes.  But I would like to resolve

11     the major issues in this round.  Okay?

12             So, let's use the government's proposed instructions

13     as sort of a starting point and a template.

14             I guess the first issue is, the government has

15     included, in addition to the instructions on aiding and

16     abetting and conspiracy, liability, references to aiding and

17     abetting and coconspirator conduct, sort of within a number of

18     the substantive instructions.

19             And, so, the question is, from the defense's

20     perspective, do those instructions misstate the law in some

21     way, or is the objection and the reason the defense left them

22     out because they are just -- because it's clunky and

23     duplicative and unnecessary, given that we're going to be

24     instructing them on the overall theories of aiding and abetting

25     and conspiracy?

1          MR. PEED:  It's because it's clunky and repetitive.

2     And then, because it's clunky and repetitive, I think the

3     government was shortening it.  And, so, not actually -- like,

4     they're using shorthand references to it that are taking the

5     broader Court's instruction and trying to distill it to get

6     away with the chunkiness, but it's also changing the meaning of

7     it.

8          So I think it makes more sense to have --

9          THE COURT:  Changing the meaning in a way that

10    actually misstates the law or just...

11         MR. PEED:  Leaves out the -- leaves out what those

12    words mean.  I have to check the instructions, but I think

13    it -- it's quite -- it's quite a fulsome conspiracy and

14    furtherance instruction and explaining to the jury what that

15    means, and then when you repeat coconspirator liability in a

16    very brief form, you're losing that context.

17         THE COURT:  Okay.  So, let's take an example.  All

18    right?

19         Count 3, first degree felony murder, the second

20    element, as stated in the government's proposed instruction, is

21    that -- so that the first two elements in the government's

22    instruction are that the victim, J. Christopher Stevens, was

23    killed.  And, two, the death of J. Christopher Stevens occurred

24    as a result of the defendant, one who he was aiding and

25    abetting, or a coconspirator, knowingly committing or

1      attempting to commit the crime of arson and burglary.

2              Whereas the defense's simply says:  The defendant

3      killed J. Christopher Stevens, either unlawfully -- I'm sorry.

4              The defendant killed J. Christopher Stevens.  The

5      defendant acted with malice aforethought, and the defendant

6      acted with premeditation.

7              So, Mr. Peed, is the government's instruction just

8      clunky, or does it also misstate the law?

9              MR. PEED:  I think it misstates the law in the sense

10     that it's not -- when it says "or a coconspirator," the scope

11     of the conspiracy is not gone into.  And what's required is

12     that the person who did the killing did it as -- you know, as a

13     foreseeable part of that conspiracy, which is the one that the

14     government has proven beyond a reasonable doubt.

15             So, by just using a shorthand coconspirator, you're

16     making it sound like any conspiracy that he had with someone,

17     if that person then does something, they're a coconspirator, so

18     he's guilty of everything that person does, which is not true.

19             So that was the basis of it.

20             THE COURT:  Okay.

21             Mr. Cummings?

22             MR. CUMMINGS:  Your Honor, I think we were careful to

23     kind of -- in the sequence we did it, it's -- first of all, set

24     forth the different theories of liability.  So, before the jury

25     heard these --

1           THE COURT:  I like the fact of instructing them on

2     liability first, rather than last.  So, I think that's a good

3     idea.

4           MR. CUMMINGS:  Right.  And I think it's important to

5     kind of remind them throughout.  I don't think the jury is

6     going to be confused by this.  I agree, it is a little clunky

7     and verbose, but I think when you take that out, it gets

8     confusing to the jury.

9           The jury has heard, throughout, the defendant here

10    referred to as the defendant.  And the fact of the matter is,

11    when we look at these jury instructions, every time you see the

12    word "defendant," it can mean one of three different things.

13    It can mean the defendant in his individual capacity, the

14    defendant as a member of a conspiracy and his coconspirators,

15    or the defendant as an aider and abetter.

16          I think without having these cues within what are

17    very complex instructions already, the jury would be confused

18    about that.  So I appreciate it is a little clunky.  I think

19    it's important to remind the jury, for each of these

20    instructions, that each of these theories of liability apply.

21          And I don't believe it's misleading because, as I

22    said going into it, we've articulated that for the jury.

23          THE COURT:  All right.  The second issue that I

24    flagged was in the government's instruction for Count 1.  In

25    the first element of the conspiracy, you don't include knowing

1    and intending that the -- that personnel would be used in

2    preparation for or carrying out the crimes resulting in -- the

3    crimes resulting in -- the crimes charged in Counts 3 through

4    17.

5            In other words, you don't refer to the underlying

6    substantive crimes as being the subject of the defendant's

7    intent.  Whereas, I think you do that in Count 2.  And I wonder

8    whether -- and the defense includes that language, I believe,

9    in both counts.

10           And the question is, Mr. Cummings, was that an

11   oversight, or is there a reason why it's in 2 but not 1?

12           MR. CUMMINGS:  May I just review it for a moment,

13   Your Honor?

14           THE COURT:  Okay.

15           (Pause.)

16           MR. CUMMINGS:  Just going back to refer to the

17   indictment, as well, Your Honor.

18           I agree it was -- I think it was an oversight because

19   I -- in just referring back to the indictment, I know we

20   included that language in the indictment itself.  So, I think

21   it should be included in Count 2.

22           THE COURT:  In Count 2.  Okay.  We'll put that in,

23   and we'll just cut and paste the language that's currently in

24   the first paragraph of Count 2.

25           MR. CUMMINGS:  Agreed.

1           THE COURT:  Government has included a withdrawal

2       instruction, and the defense objects to that.

3           Do you want to say why, Mr. Peed?

4           MR. PEED:  We're not contending withdrawal, Your

5       Honor.  And I think when there's no argument of withdrawal, or

6       evidentiary basis for withdrawal, then it's sort of -- I think

7       it's kind of a tool to show to the jury the absence of things

8       that no one is contending is there; but, I think, kind of

9       prejudices towards finding it conspiracy, based on the absence

10      of withdrawal, when no one is claiming withdrawal in the first

11      place.

12          So I don't think it is necessary.  And, actually,

13      it's slightly prejudicial to talk about a defense that's not

14      raised.

15          THE COURT:  Mr. Peed?

16          I mean -- sorry -- Mr. Cummings?

17          MR. CUMMINGS:  All right.  Again, I think the facts

18      in the case suggest that a jury could view withdrawal as a

19      potential issue.  Because in looking at the defendant's own

20      statement, himself, he says he leaves much earlier on in the

21      evening, describes going to the Mission, returning to the AAS

22      Camp, and then going home immediately after that.

23          The jury could wonder:  Well, if he's going home

24      before the Annex attack, how is he somehow responsible for

25      that?

1          I think, as a factual matter, the issue of withdrawal

2     is before the jury, even if the defendant isn't affirmatively

3     asserting it.

4          THE COURT:  And, I'm sorry.  What's the evidence of

5     withdrawal?  He -- his statements on the ship that --

6          MR. CUMMINGS:  Sure.  His statements.  The fact that

7     he is last seen on video at the Mission shortly after midnight.

8     The fact that the government has not been able -- you know, in

9     terms of the evidence about who actually attacked the Annex,

10    there is no specific identification of conspirators there.

11    Such that the jury might wonder how it is that Al-Imam could be

12    held responsible for what happened at the Annex, if according

13    to his statement -- if they credit it -- he went home shortly

14    after the attack on the Mission.

15         THE COURT:  Okay.  The defense suggests, at numerous

16    points, referencing the fact that personnel was the type of

17    material support that's being used.  And then there's a

18    definition of what personnel is.

19         Do you want to address that?  Whereas the defense --

20    excuse me -- the government does not include that.

21         MR. PEED:  Yes, Your Honor.

22         The defense has to answer the indictment, and the

23    indictment only charges personnel.  And we're worried that

24    "material support" is such a vague term that the jury could

25    attach any meaning to that, find him guilty, when he's only

1     been charged and has to answer for personnel.

2           Also, personnel has a -- you know, a certain meaning

3     in the material support statute, and we've cited the cases for

4     that.  So I think it's necessary to understand what he's

5     charged with and what he --

6           THE COURT:  So the government's proposal includes

7     that idea:  Term material support or resources includes

8     personnel -- open parens -- one or more individuals who may be

9     or include one's self.

10          And I think your -- you go a little bit farther.  And

11    each time "material support" is mentioned, you say:  In the

12    form of personnel.  So it's kind of a similar argument as to

13    the aiding and abetting and conspiracy issues, from the

14    government's perspective.

15          MR. PEED:  I was trying to include the entire

16    definition.  Because it's my understanding of the law that he

17    can't be convicted for providing a form of material support

18    that he's not been charged with.  And the -- not just

19    personnel, including himself, but I tried to put out -- I tried

20    to include a definition of what personnel means.

21          Because there is -- what Congress did was, they had

22    personnel in the statute, and then courts were concerned about

23    vagueness.  So they added a definition in one part of the

24    statute, which is not the one he's charged under.  Because they

25    put it under the part that refers to people being on the

1    terrorism list.  But I think courts have treated this as,

2    essentially, the same statute, that it's verbatim the same.

3            And so what Congress said of personnel is it's,

4    essentially, like an employee.  So, someone acting on their

5    own, in the context of an attack, is not necessarily acting as

6    personnel.  They have to be putting themselves under the

7    direction of someone else, like an employee, under the

8    definition that Congress provided for the statute.

9            So, I just feel like that -- jury is going to have,

10   like, no understanding that there is a limited -- that

11   personnel is a term of art, and that personnel is the form of

12   material support that he's charged with.  They may just

13   think --

14           THE COURT:  So, if I hear that a bunch of folks are

15   going to go rob a bank and I show up and I help rob the bank,

16   am I providing material support?

17           MR. PEED:  Robbing a bank --

18           THE COURT:  In the form of -- assuming that that's

19   one of the predicate statutes.

20           MR. PEED:  Right.  If Congress added that to the

21   predicate, no, Your Honor would not be guilty of providing

22   material support.  He would be guilty of aiding and abetting a

23   bank robbery, but not guilty of providing material support

24   during the commission of a bank robbery, because you would be

25   doing it yourself.

```
 1              THE COURT:  Mr. Cummings?

 2              MR. CUMMINGS:  I think -- I guess I'm just a little

 3    confused.  There's no evidence of him acting alone here.  You

 4    know, he's acting in concert with others; even by his own

 5    statement, acting upon the orders of Abu Khatallah.  And,

 6    again, I think the government has included the appropriate

 7    definition from the statute within its language to make that

 8    clear.

 9              THE COURT:  Which page is that on?

10              MR. CUMMINGS:  I'm sorry.  Just -- I believe it's

11    page 30 -- well, let me give you the count number, because I've

12    got to track changes.

13              So it is under Count 2.

14              THE COURT:  Is that the --

15              MR. CUMMINGS:  One, two.  The term material support

16    or resources includes personnel, one or more individuals who

17    may be or include one's self.

18              THE COURT:  And where does that language come from?

19              MR. CUMMINGS:  It comes from the statute, I believe,

20    Your Honor.

21              THE COURT:  Okay.  Okay.  We'll look at that.

22              404(b)?

23              MR. CUMMINGS:  Pardon me?

24              THE COURT:  404(b).  You had some placeholders right

25    after instruction -- Instruction No. 27.
```

1              Is the Al-Barghathi incident the only 404(b) in the

2      case, since V-1 didn't testify?

3              MR. CUMMINGS:  Right.  I think there is -- there's

4      the movement of weapons described by Majrisi, as well as the

5      defense in relation to the Al-Barghathi incident.

6              THE COURT:  Okay.

7              MR. CUMMINGS:  And those were the two items that were

8      noticed to the defense.  So I believe those would both be

9      applicable.  And there was testimony about both of those at

10     trial.

11             THE COURT:  Okay.  And is that motive, identity, or

12     common scheme?

13             MR. CUMMINGS:  And just, I think -- I don't think it

14     comes under 404(b).  We did mention it.

15             There is also the issue about the assault on the -- I

16     would call him the young man, that we had kind of included in

17     our 404(b) notice.  So we view that more as direct evidence as

18     we included it in our instruction.

19             THE COURT:  Yeah.  That was the Court's ruling.  The

20     Court's ruling on the motion in limine on the 404(b) notice was

21     that it was direct evidence.

22             MR. CUMMINGS:  Right.  Wanted to make sure I covered

23     that.

24             THE COURT:  So does the movement of weapons and the

25     Al-Barghathi incident, does that -- those are both identity?

1          MR. CUMMINGS:  Those go to -- again, I believe in how

2     we articulated, and what the Court held, is they were

3     admissible to show the defendant's relationship to

4     Abu Khatallah, and his willingness to follow orders and serve

5     Abu Khatallah, I believe is how the Court admitted that.

6          THE COURT:  Right.  But -- so that doesn't really

7     fall into either motive, identity, or common scheme -- which

8     you've included -- or intent, absence of mistake, accident, or

9     knowledge.

10          MR. CUMMINGS:  I think it goes to intent.  That his

11     intent was to follow Abu Khatallah, and follow Abu Khatallah's

12     orders.

13          THE COURT:  Okay.

14          MR. CUMMINGS:  And that's demonstrated by his

15     continuing to follow those order and serve Abu Khatallah after

16     the attack itself.

17          THE COURT:  All right.  So that would mean that we

18     would delete the language just following Instruction No. 27 for

19     the next -- and the full page after that?

20          MR. CUMMINGS:  I'm just getting there.  Still stuck

21     in the elements of the offense.

22          THE COURT:  Yeah.

23          MR. CUMMINGS:  27.

24          I'm sorry.  Your Honor was referring to striking

25     which language?  I'm sorry.

```
 1              THE COURT:  So, in Instruction 27, you've divided it

 2      up into two sections.

 3              MR. CUMMINGS:  Right.

 4              THE COURT:  The first one:  Evidence regarding

 5      motive, identity, or common scheme or plan.

 6              MR. CUMMINGS:  Right.

 7              THE COURT:  And it sounds like we don't have any

 8      evidence of that in the case.

 9              MR. CUMMINGS:  I believe that's correct.

10              THE COURT:  All right.  So, we'll delete all of that.

11      And then just describe the --

12              MR. CUMMINGS:  Intent and absence of mistake.

13      Intent.

14              THE COURT:  Yeah.

15              MR. CUMMINGS:  And, again, I believe that's what the

16      Court admitted it for, that purpose.

17              THE COURT:  Okay.  And, again, it's the Al-Barghathi,

18      and it's the movement of weapons from the garage; is that

19      right?

20              MR. CUMMINGS:  Yes.

21              THE COURT:  Okay.  All right.

22              There's an instruction on finding whether someone is

23      an internationally protected person.  I think we stipulated to

24      the fact that Mr. Stevens was an internationally protected

25      person.
```

1           MR. CUMMINGS:  We did, as the Court did in the last

2    case.  I think it's still something the jury has to find.  And

3    they can accept or not accept the stipulation, I believe.

4           THE COURT:  Okay.  All right.

5           Are there any other, sort of, global issues that you

6    want to raise now?

7           MR. CUMMINGS:  There's just kind of a couple things

8    that the government caught in going through that we just bring

9    to the Court's attention.

10          THE COURT:  Okay.

11          MR. CUMMINGS:  Under Instruction 18, under

12   suppression of evidence involving the assault on the young

13   man --

14          THE COURT:  Okay.  Hold on.

15          MR. CUMMINGS:  Sure thing.

16          -- I think the language that we had included, that

17   his phone was taken from him, I don't believe, in reviewing it,

18   that Detective Marcano testified about that, or that was

19   included in the defendant's statement.

20          THE COURT:  Okay.

21          MR. CUMMINGS:  So I would strike that portion of it.

22          THE COURT:  Okay.

23          MR. CUMMINGS:  As I mentioned in the email last

24   night, the felony murder theory only applies to Sean Smith.  It

25   would not apply to Woods and Doherty.  That was under Count 4,

```
 1    I believe.
 2              Again, I think the remedy for that was that the
 3    government, in Count 4 -- or, the instructions for Count 4
 4    through 6, in the introductory paragraph, again, would identify
 5    who's named in each count.  And then I would simply suggest
 6    saying:  For Count 4, concerning Sean Patrick Smith, you may
 7    find the defendant guilty if the government proves beyond a
 8    reasonable doubt A and B.
 9              And then for Counts 5 and 6, concerning Tyrone Woods
10    and Glen Anthony Doherty, you may only find the defendant
11    guilty if the government proves beyond a reasonable doubt that
12    the defendant committed first degree felony murder.
13              THE COURT:  That's explained in the email?
14              MR. CUMMINGS:  Right.  It actually should be first
15    degree premeditated murder, just to make it clear which theory
16    applies to which victim.
17              THE COURT:  Okay.
18              MR. CUMMINGS:  Similar, we had identified, in
19    describing Counts 7 through 9, No. 2, I think we have to
20    include:  The defendant, one whom he was aiding or abetting, or
21    a coconspirator engaged in conduct that constituted a
22    substantial step toward committing --
23              THE COURT:  Yeah.  I saw that.  Your language
24    "reasonably adapted to accomplishing" strikes me as a little
25    bit awkward.
```

```
1              MR. CUMMINGS:  And that's why I'm going back through

2    these.

3              THE COURT:  Okay.  Let's use substantial step.  Okay.

4              MR. CUMMINGS:  Substantial step.  Because then we

5    define that later on.

6              THE COURT:  Yep.

7              MR. CUMMINGS:  And I believe there's one other place

8    where we needed to specify the Annex.  In Count 14 and 15,

9    subsection 1, I think we have to specify:  At least in whole or

10   in part by the United States, that it is the U.S. Special

11   Mission, Count 14; where the CIA Annex, Count 15.  I think we

12   had only listed the Mission there.

13             THE COURT:  But, again, that's in your email?

14             MR. CUMMINGS:  I don't believe this is in the email,

15   no, Your Honor.

16             THE COURT:  Okay.  Explain that one to me more

17   specifically.

18             MR. CUMMINGS:  Sure.

19             If you look at the way the government drafted it,

20   Paragraph 1 says:  The defendant, one whom he is aiding and

21   abetting, or a coconspirator, damaged or destroyed property, or

22   attempted to damage or destroy buildings, vehicles, personal

23   property, and real property owned, possessed, and leased, in

24   whole or in part, by the United States; that is, the U.S.

25   Special Mission.
```

1            We had failed to include in there the Annex.

2            THE COURT:  Oh, I see.  So, just say:  And the Annex.

3            MR. CUMMINGS:  Right.  So, U.S. Special Mission, in

4     parens, Count 14, or the CIA Annex, Count 15.

5            THE COURT:  Got it.

6            MR. CUMMINGS:  And, again, I think you made a similar

7     change in Paragraph 5 of that same subsection.  I think we just

8     wanted to include kind of and/ors throughout when we're talking

9     about Mr. Woods or Mr. Doherty, because they could find one and

10    not the other, in theory.

11           THE COURT:  So instead of "and," "and/or" for each

12    one?

13           MR. CUMMINGS:  Correct.  And the one other issue, I

14    just -- I want to go back and look at this -- look at it,

15    again, which is, I'm wondering if the government has made it

16    harder on itself in reference to the 930 counts.  And I just

17    want to go back and speak to somebody in appellate about that.

18    And I'll submit any proposed changes to the Court there.

19           THE COURT:  Okay.

20           MR. CUMMINGS:  It just seems we may not be required

21    to approve the use.  Merely bringing on the firearm and a

22    murder occurs while a firearm is brought on to the federal

23    facility may be enough.  But, again, I just want to run that by

24    somebody.  I'll forward that to the Court.

25           THE COURT:  No problem.

1          Mr. Peed, anything else?

2          MR. PEED:  The Court did not get into other

3    differences between the parties' counts in Count 1.  I think

4    the government, this time, had included a lot of language

5    related to terrorists that was not in the --

6          THE COURT:  Yeah.  I'm inclined to leave terrorists

7    out.  I understand that it's part of the statutory heading.

8    You know, we can -- I'll include it in the title of Count 1,

9    but the statute criminalizes providing material support and

10   resources with the intent to violate predicate offenses.  That

11   may or may not have to do with terrorism.  So, I think it's a

12   more accurate statement of what the statute actually prohibits.

13         Anything else?

14         MR. PEED:  No, Your Honor.  We'll submit, as soon as

15   possible, the theory of the defense instruction.

16         THE COURT:  Yes, as soon as possible.

17         All right.  That's all I had.  We'll try to get

18   something to you this afternoon.

19         MR. CUMMINGS:  Did Your Honor want us to return or --

20         THE COURT:  Let's see how quickly we can do it.  If

21   we turn it around pretty quickly, I would rather, you know, do

22   it this afternoon, so we don't take up the time in the morning.

23         MR. PEED:  One more issue, Your Honor.

24         In our Rule 29 motion, we objected to venue because

25   there wasn't any evidence as to venue.  The case law says that

1    if it's a material -- if it's a material -- if it's a material

2    factual dispute, then it can go to the jury.  We would just

3    make the request that it go to the jury.

4         Basically, through cross-examination I tried to ask

5    certain questions related to the venue question.  But, I don't

6    think the government put on any evidence for it.

7         THE COURT:  So, give me a little more.  What's the --

8    what's your venue objection?

9         MR. PEED:  Well, the indictment adequately alleges

10   venue.  You know, when the indictment does not adequately

11   allege venue, or there's some facially obvious defect in venue,

12   defendant has to raise it pretrial.

13        Here, the indictment adequately alleged that venue

14   was predicated on Mr. Khatallah being first brought into the

15   District of Columbia.  So, there was no pretrial issue to

16   raise, but it was incumbent upon the government to actually

17   establish venue.  So, that's why I included venue in my Rule 29

18   motion at the bench.

19        So, under *Haire*, H-A-I-R-E, D.C. Circuit, sort of

20   standard on when venue becomes a jury question.  Venue becomes

21   a jury question when there's a material issue of disputed fact,

22   essentially.

23        I don't know if this rises to it because there was

24   just no evidence in the government's case about where

25   Mr. Khatallah was brought.  If the absence of that evidence

1   raises a material issue, then I would ask it to go to the jury.

2   If it doesn't, then I would just ask for a directed verdict, as

3   I did at the bench.

4          THE COURT:  Mr. Cummings?

5          MR. CUMMINGS:  I -- first of all, I don't think there

6   was -- there was numerous challenges to venue in this case

7   raised pretrial; this was not one of them.

8          Mr. Khatallah is not the defendant in this case.  I

9   don't believe there is any material dispute that Mr. Khatallah

10  was brought into the District of Columbia, and venue was found

11  proper there.  As a consequence, venue flows to the additional

12  coconspirators who were brought in thereafter, is my

13  understanding.

14         Again, this is an issue that's being raised for the

15  first time here.  I don't believe there is a material dispute

16  as to that fact in the record.

17         THE COURT:  Okay.  All right.  I guess the ball is in

18  our court.  So, you'll hear from us this afternoon.

19         MR. CUMMINGS:  Thank you, Your Honor.

20                         *   *   *

21

22

23

24

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4

5          I, JANICE DICKMAN, do hereby certify that the above

6    and foregoing constitutes a true and accurate transcript of my

7    stenograph notes and is a full, true and complete transcript of

8    the proceedings to the best of my ability.

9                         Dated this 3rd day of June, 2019.

10

11

12                         /s/_____

13                         Janice E. Dickman, CRR, RMR, CRC
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001

16

17

18

19

20

21

22

23

24

25