```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
         - - - - - - - - - - - - - - - x
 3       THE UNITED STATES OF AMERICA,
                                           Criminal Action No.
 4                    Plaintiff,           1:17-cr-00213-CRC-1
                                           Monday, June 17, 2019
 5       vs.                               10:39 a.m.

 6       MUSTAFA MUHAMMAD MUFTAH AL-IMAM,

 7                    Defendant.
         - - - - - - - - - - - - - - - x
 8       _____

 9                     TRANSCRIPT OF JURY TRIAL
             HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
10                    UNITED STATES DISTRICT JUDGE
         _____
11       APPEARANCES:

12       For the United States:     JOHN M. CUMMINGS, ESQ.
                                     KAREN PATRICIA SEIFERT, ESQ.
13                                   U.S. Attorney's Office for D.C.
                                     555 4th Street NW
14                                   Washington, DC 20530
                                     (202) 252-7527
15

16       For the Defendant:         MATTHEW J. PEED, ESQ.
                                     CLINTON & PEED
17                                   777 6th Street, NW, 11th Floor
                                     Washington, DC 20001
18                                   (202) 621-1828

19       Interpreters:              Aziz Err300300 Erraziqi

20       Court Reporter:            Lisa A. Moreira, RDR, CRR
                                     Official Court Reporter
21                                   U.S. Courthouse, Room 6718
                                     333 Constitution Avenue, NW
22                                   Washington, DC  20001
                                     202-354-3187
23

24       Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription
25
```

```
 1                      P R O C E E D I N G S
 2             THE COURTROOM DEPUTY:  Okay.  Your Honor, we're on
 3    the record for Criminal Case 17-213, United States of
 4    America vs. Mustafa Al-Imam.
 5             THE COURT:  Good morning, everybody.
 6             MR. CUMMINGS:  Good morning.
 7             THE COURT:  Hope you had a nice weekend.
 8             So we had two notes on Thursday before we
 9    dismissed the jury for the weekend.  I think we discussed
10    them.  The Court, over the weekend or on Friday, proposed
11    responses to both notes.  Mr. Peed has filed a motion for
12    the declaration of a mistrial based on the jury's prior
13    indications that they were deadlocked on the charges that
14    they did not return a verdict on on Thursday.
15             So Mr. Peed, do you want to be heard on that just
16    for the record?  And then lodge any objections you have to
17    the two notes that the Court has proposed or the two
18    responses the Court has proposed to send in.
19             MR. PEED:  As noted in the motion, Your Honor,
20    Rule 32 permits receiving a partial verdict, but it's not
21    the preferred approach, and by its terms it anticipates
22    receiving a partial verdict when the jury is at its end and
23    quickly followed by a mistrial.
24             Here we received the partial verdict very late in
25    the day at the end of the period that the jury had
```

1    anticipated would be needed, and so I think it was not

2    particularly objectionable in that context.  There's very

3    little risk that another hour or two would have led to

4    changes of heart or, you know, the reasons that the partial

5    verdict are potentially problematic and prejudicial to a

6    defendant.  But I believe that the calculus completely

7    changes if they're brought in here -- I honestly don't know

8    if they understand the extent to which they can decide to

9    send another note.  They may feel like they are bound to

10   keep deliberating indefinitely, and, in particular, since

11   they've now asked a question about the count they've already

12   returned a verdict on, it goes to exactly the problem with

13   partial verdicts, which is further discussion may lead to

14   changes of heart or changes of mind on issues they've

15   already returned, which become revocable once they're on the

16   record and polled.

17          Based on that, Your Honor, I would just move to

18   have a mistrial on the counts that they've twice said

19   they're hung on and at the very least inform them at the

20   beginning of the day today that it's up to them to decide if

21   they think it will be fruitful to continue deliberating.

22          THE COURT:  Okay.  Why don't we stop there.

23          Mr. Cummings, Ms. Seifert.

24          MR. CUMMINGS:  I think, first of all, it's not

25   fair to characterize them as focusing on a verdict which

1   they've already returned.  It seems very clear that they're

2   focusing on Count 17 now and the injury to property, which

3   is obviously less than the destruction of property that they

4   were dealing with in Count 16.  I note that this is the

5   second time they've asked about this specific term, and it

6   is somewhat an unnatural term when you're applying it to

7   real property.

8              In terms of the jury's actions here, I believe

9   their initial partial verdict note was sent out somewhere

10  around 3:00.  It was late in the day, and, if the Court will

11  recall, they asked to leave early, at 4:00.  I think it's

12  important to also note that the jury clearly anticipated

13  that they were going to continue their deliberations through

14  Monday based on the note from one of the jurors asking to

15  start late today because of an outstanding obligation.

16             In terms of some of the other points made by

17  counsel, I think it's important to note in terms of the

18  duration of deliberations, the jury has elected to take two

19  Fridays off during those deliberations I think reasonably

20  understanding that would extend the amount of time they

21  might be here.

22             In terms of the effect on this particular -- their

23  note that they sent out after they returned the partial

24  verdict, I think it follows a pattern that we've seen

25  before.  I think the jury is doing precisely what the *Thomas*

 1    instruction that this Court provided and which the D.C.

 2    Circuit has approved intends them to do.  They went back

 3    with an open mind and figured out here is an issue that

 4    we're hung up on.  Again, I think, as we've seen with this

 5    jury, substantive questions, logical questions in light of

 6    the facts and evidence before them.  I don't think there's

 7    any reason to believe that the jury is doing anything other

 8    than what they should be doing in this case, which is, as

 9    the Court instructed them, keep an open mind and give it one

10    more try.

11          The jury, I think, also understands from the

12    Court's instructions that it provided on Thursday afternoon,

13    if they are at a point where they're just at an impasse, the

14    Court has made it clear to them the jurors should come back

15    and say that.  So I don't think they're under any additional

16    pressure in any way, shape, or form given the pattern of

17    this jury and the Court's instructions and the timing.

18          THE COURT:  Okay.  What I intend to do is I'll

19    call them in and just let them know that I took their notes

20    on Thursday as an indication that they were continuing to

21    deliberate in a productive manner and that we've worked to

22    give them responses to those notes, which we will send in,

23    and to remind them that how long they want to deliberate

24    further is up to them, okay?  So the motion for mistrial is

25    denied.

1            As to the content of the note, any other issues or

2     objections you want to lodge?

3            MR. PEED:  On the note of 3:01 p.m., Your Honor,

4     just to lodge for the record, having reviewed the Note 2, I

5     believe it was, that they sent and having seen it as

6     essentially asking for a definition of the same term, for

7     consistency's sake, I think the Court should use that prior

8     response, which was just used to refer them to the common

9     understanding.

10            The term they're asking about wasn't -- in Count

11     16 and Count 17 is the same statute and the same language,

12     and they've now returned a verdict on Count 16 based on the

13     Court's prior instruction to use their common understanding,

14     and so I think, based on that, for consistency's sake, the

15     Court should have them continue to have that understanding.

16            For the other -- for the note of 3:34 p.m., the

17     defense is very concerned about the application of Pinkerton

18     liability to first degree murder.  I've attempted to find

19     clear descriptions of how Pinkerton is applied in the first

20     degree murder context.  There's very little case law on it.

21     It has been applied in the first degree murder context when

22     the murder was considered an object of the conspiracy.  So I

23     believe I put some kind of addendum to this instruction just

24     referencing the other things the jury has to find to try to

25     emphasize that it has -- for Pinkerton liability, it has to

1    be -- the object of the conspiracy itself has to make pre --

2    not just a killing, but a premeditated murder foreseeable.

3         THE COURT:  Okay.  So I've basically taken out the

4    extra language that each side proposed to -- in favor of a

5    very directed response to the actual question that they've

6    asked in the note, okay?

7         MR. PEED:  I think what I would ask is some sort

8    of language -- if I recall, the jury note asked:  Is it

9    sufficient that a defendant, one he aided and abetted, or a

10   conspirator, merely intended to kill?  And it's not

11   sufficient that they merely intended to kill for co-

12   conspirator liability.  What's sufficient is that the

13   defendant could foresee a premeditated killing with malice

14   aforethought.

15        THE COURT:  Right, and we have pointed them to

16   those instructions, and -- that are defined -- those terms

17   that are defined elsewhere in the instructions.

18        All right.  Does the government want to be heard

19   on the two notes?

20        MS. SEIFERT:  With respect to the first note at

21   3:01, Your Honor, I think defense's issue was why the

22   government initially suggested that Your Honor give them an

23   instruction that said it has its normal and plain meaning,

24   which is what you said before, and it includes physical

25   damage or harm.  I understand Your Honor wanted to be more

1    simplified, which is why you went with the instruction.  We

2    don't object to either way.

3              THE COURT:  Okay.  And just for the record, for

4    the first note we told them to use the common understanding,

5    and now they're telling us they don't have a common

6    understanding.

7              MS. SEIFERT:  Right.

8              THE COURT:  And so that, I think, justifies a

9    little more detail than we gave previously.

10             MS. SEIFERT:  That's fine, Your Honor, for the

11   government.

12             With respect to the second note, just so the

13   record is clear, there's no mention of the word "merely" in

14   the second note.  The second note states:  For the jury to

15   find premeditated murder must the jury find that the

16   defendant, one he aided and abetted or a co-conspirator,

17   intended to kill a specific person, or is it sufficient to

18   find they merely intended to kill?  We read that question as

19   only dealing with the mental state with respect to

20   premeditated murder and nothing more.

21             They've asked other questions about conspiracy and

22   about the scope of co-conspirator liability and what a

23   reasonably foreseeable consequence is.  We've answered those

24   questions.  I think we can trust them that, if they have

25   questions on how that liability applies to first degree

1     premeditated murder, they will ask.

2              THE COURT:  Okay.  Mr. Peed, your objections are

3     noted for the record.

4              Are they all back there, Lauren?

5              THE COURTROOM DEPUTY:  I haven't checked.

6              (Jury enters courtroom)

7              THE COURT:  Good morning, everyone.

8              IN UNISON:  Good morning.

9              THE COURT:  How was your weekend?  Good.

10             How did the team do, Juror No. 7?

11             JUROR NO. 7:  2 and 2.

12             THE COURT:  All right.  Could have been worse.

13             All right.  Ladies and gentlemen, when we took the

14     partial verdicts on Thursday, I asked if you would let me

15     know at the end of the day whether you thought that further

16     deliberations would be productive.  We received two notes

17     from you thereafter and dismissed you around 4:00.  You said

18     you wanted to knock off a little bit early.  I took the

19     notes to mean that you were deliberating productively, and

20     so we called you back today.  Counsel and I have worked to

21     craft responses to both notes, which we will send back into

22     the jury room.

23             And I will tell you again what I told you on

24     Thursday.  It is up to you to decide how long to deliberate

25     in this case and whether further deliberations would be

1   productive.

2           So we'll send you back to the jury room to

3   continue your deliberations with the benefit of responses to

4   your two notes of Thursday, okay?  Thank you.

5           (Jury exits courtroom)

6           THE COURT:  Okay.  Do you have copies, Lauren?

7           Okay.  All right.  So we'll see where we are by

8   the end of the day.  As I said, I leave tomorrow for a

9   Judicial Conference Committee meeting, so if we don't have a

10  mistrial by the end of the day then someone else will take

11  the verdict.  I'll be in contact by email and can deal with

12  any notes, but we'll have to get someone to stand in if they

13  come back past today, all right?

14          MR. CUMMINGS:  Thank you.

15          MS. SEIFERT:  Thank you, Your Honor.

16          (Recess taken from 10:55 a.m. t0 12:23 p.m.)

17          THE COURT:  All right.  We're back on the record.

18  We received a note an hour ago now saying that the jury has

19  not been able to come to unanimous agreement on any of the

20  remaining counts.

21          Given that this is the seventh day of

22  deliberation, it's their third hung note on the outstanding

23  counts, we've given them the *Thomas* charge, and the defense

24  has objected to any stronger deadlock charge, so unless the

25  defense consents to that, I think we've probably reached the

1    end of the road here.

2            So what I intend to do is call them in, thank

3    them, discharge them, declare a mistrial on the remaining

4    counts, then I'll go back and thank them personally and chat

5    with them a little bit about process, not about substance,

6    okay?

7            MS. SEIFERT:  We'd like the Court's permission to

8    speak to the jurors, if they're willing to, about the hung

9    charges.

10           THE COURT:  I'm going to -- why don't you

11   approach.

12               (The following is a conference held at the

13                bench outside the hearing of the gallery)

14           THE COURT:  I'm going to deny that request because

15   we've got two counts of conviction, but I will ask them what

16   their split was on the hung counts and advise both sides of

17   that.

18           MS. SEIFERT:  The Court will ask them?

19           THE COURT:  Yes.

20           MS. SEIFERT:  Okay.  And will let us know?

21           THE COURT:  Yes.

22           MS. SEIFERT:  Okay.  Thank you.

23               (This is the end of the bench conference)

24               (Jury enters courtroom)

25           THE COURT:  All right.  Madam Foreperson, you sent

1    out a note at 11:25 saying that the jury has not been able

2    to come to unanimous agreement on any of the remaining

3    counts.  Is that still the case?

4              THE FOREPERSON:  That is still the case.

5              THE COURT:  And would further deliberations be

6    likely to lead to a verdict?

7              THE FOREPERSON:  No, they will not.

8              THE COURT:  Okay.  Well, with that, I will thank

9    you for your service and discharge you from your duties.  If

10   you could go back to the jury room, it will take me about

11   three minutes to discuss a couple of things with the

12   lawyers.  I'd like to come back and thank you personally and

13   to chat with you a little bit about the process, okay?

14              And if you would prefer not to stay, that's fine.

15   You can report to the jury room and turn in your badges, but

16   otherwise it will take me about three or four minutes, okay?

17   Thanks.

18              (Jury exits courtroom)

19              THE COURT:  All right.  For the reasons stated,

20   the Court will declare a mistrial on Counts 2 through 15,

21   Count 17, and the special finding in Count 1, all right?

22              Want to approach -- well, we can do it in open

23   court.

24              How long does the government need to notify the

25   Court as to its intentions to go forward?

1          MR. CUMMINGS:  Your Honor, I think -- just because

2    we're going to have to consult with Main Justice as well,

3    and there is, of course, the related conviction in *Khatallah*

4    and other potential defendants, I think we'd want at least

5    30 days, Your Honor.

6          THE COURT:  Okay.  Does that create speedy trial

7    issues, just thinking out loud, or, Mr. Peed, are you

8    willing to -- we have two counts of conviction.

9          MS. SEIFERT:  I think now that he's convicted he's

10   presumed to be held pending his sentencing so I don't think

11   the speedy trial concern is an issue.

12        THE COURT:  I'll give you 30 days, and if you know

13   before then, please let me know.

14        MR. CUMMINGS:  We will, Your Honor.

15        MS. SEIFERT:  Your Honor, might we also request

16   that the Court, in its conversation with the jury, remind

17   the jury of its prior admonition with respect to classified

18   information that the jury received noting that, although

19   they are free to talk about the facts of the case, they

20   remain -- that classified information should remain

21   something they do not talk about.

22        THE COURT:  Yes, I'll do that.

23        Mr. Peed, just file a motion suggesting a briefing

24   schedule for post-trial motions.  I won't necessarily --

25   given the complexity of the case, I won't hold you to the

1    rules, but just let me know what makes sense.

2              MR. PEED:  Okay.  Thank you, Your Honor.

3              THE COURT:  Anything else?

4              MS. SEIFERT:  No, Your Honor.

5              MR. CUMMINGS:  No, Your Honor.

6              THE COURT:  Okay.  We'll be in touch on the other

7    issue.

8                   (Whereupon the hearing was

9                    concluded at 12:30 p.m.)

10

11          **CERTIFICATE OF OFFICIAL COURT REPORTER**

12

13              I, LISA A. MOREIRA, RDR, CRR, do hereby

14   certify that the above and foregoing constitutes a true and

15   accurate transcript of my stenographic notes and is a full,

16   true and complete transcript of the proceedings to the best

17   of my ability.

18      Dated this 26th day of May, 2020.

19

20                          /s/Lisa A. Moreira, RDR, CRR
                            Official Court Reporter
21                          United States Courthouse
                            Room 6718
22                          333 Constitution Avenue, NW
                            Washington, DC 20001
23

24

25